BURNS ET AL. V. LEDBETTER.

(Case No. 642.)

1. APPEAL BOND — JUDICIAL SALE.— An appeal bond given to remove a cause to the supreme court, and conditioned as required by art. 1493, Pasch. Dig., operates a suspension of the power to sell under the judgment of the district court pending appeal, and one who purchases pending such appeal acquires no title.

2. TAX SALES — STATUTES CONSTRUED.— The act of June 2, 1873, requiring the comptroller of public accounts to make out a descriptive list of all delinquent taxes and forward the same to the sheriffs of counties, made ample provision for the condemnation and sale of land as required by the constitution. The list, when made out and forwarded, formed the basis of adjudication to result in condemnation and sale of land for taxes. All taxes then or thereafter to become due were embraced in the terms of this act.

3. REDEMPTION OF LAND SOLD FOR TAXES.— A tender to the purchaser at tax sale, under the 3d section of act of June 2, 1873, concerning taxes, the full amount of the purchase money paid for land at such sale, within twelve months, with one year's interest on the same, at the rate of twenty-five per cent. per annum, worked *ipso facto* an immediate redemption of the land by the original owner, and left the purchaser at tax sale without title.

4. CASES DISCUSSED AND REVIEWED.— Howard *v.* North, 5 Tex., 290; Baily *v.* White, 13 Tex., 114; Andrews *v.* Richardson, 21 Tex., 297; McDonough *v.* Cross, 40 Tex., 285, and Peters *v.* Clements, 52 Tex., 140, discussed and reviewed.

5. PURCHASER AT EXECUTION SALE.— When a judgment is valid, but an execution or sale thereunder is invalid, the purchaser will be entitled ordinarily to hold the property until he is reimbursed the amount paid by him, when he is not a party to the judgment, has been guilty of no fraud in the purchase, and the money paid by him has been applied to the judgment.

6. SAME.— When, however, the purchaser was attorney for the plaintiff in the judgment, and the money paid by him at execution sale liquidated but a portion of the judgment, he is not entitled to retain possession of the property until reimbursed, but is subrogated to the lien of the original judgment on the property purchased for the amount paid on that judgment, less the value of the use and occupation during the time he held possession of the property.

APPEAL from Fayette.  Tried below before the Hon. J. B. McFarland. ·

Suit in trespass to try title, brought by the appellant, Ledbetter, under statute authorizing the plaintiff to bring a second suit within twelve months against the appellees, Burns and wife, to recover, or quiet the title to, certain town lots in the town of La Grange; and at the same time, by an injunction, to restrain them from using and causing to be executed, a writ of restitution, awarded them by a former judgment in a suit by the same plaintiff against the same defendants, for the same property. On the 8th of November, 1875, the cause was tried in the district court of Fayette county, when Ledbetter appealed to this court.

Both parties claimed title to the land in question from a common source, the estate of the Doxeys. In 1868, at the October term of the Fayette county probate court, the administrator of Doxey's estates was ordered to make sale of the property in controversy to pay debts against said estates. The property was regularly sold by the administrator on the first Tuesday in December, 1868, by virtue of the order, and purchased by the appellees, Burns and wife, the deed being made to Mrs. Adelia Burns.  By the terms of the sale, the purchaser was required to give his note with personal security for the purchase money,

and a mortgage on the property to secure its payment. This being done, and the purchase money still remaining unpaid, suit was instituted for its recovery in the district court of Fayette county, and on the 30th of April, 1873, judgment was rendered in favor of Doxey's administrator, against all the makers of the note (except the married woman, Mrs. Burns), for the amount due on it, with a decree foreclosing the mortgage lien and ordering a sale by the sheriff of the property in question for its payment.    From that judgment and decree the defendants gave notice of appeal to the supreme court, and gave bond for costs and damages under article 1493, Pasch. Dig.

The judgment in that case was affirmed by this court on the 26th day of March, 1875.

Notwithstanding the filing of the appeal bond, the plaintiff, Doxey's administrator, on the 6th of June, 1873, sued out an execution, or order of sale based on the judgment and decree, and placed the same in the hands of the sheriff of Fayette county, who, on the same day, as ordered by it, levied it on the property in controversy. On the first Tuesday in July, 1873, the sheriff sold the property according to the directions of the order, when the plaintiff in this suit, Ledbetter, became the purchaser for the sum of $1,100, and received his sheriff's deed therefor.    The defendants then being in possession of the property, Ledbetter instituted his suit (an action of trespass to try title) against them, and obtained possession by virtue of a writ of sequestration and a replevin bond. This suit was tried on the 7th of November, 1873, in the district court of Fayette county, when the verdict and judgment being adverse to Ledbetter, he appealed to the supreme court, where the cause was affirmed against him, on the 26th day of March, 1875.    See Ledbetter v. Burns, 42 Tex., 508.

Ledbetter then instituted this his second suit of trespass

to try title, and to restrain Burns and wife from suing out the writ of restitution awarded them in the affirmed judgment; and prayed in the alternative for judgment against Burns for the amount of money paid by him on the execution, and that he hold possession of the property until the amount is paid. And in the event the same is not paid within one year, that then they be barred of all right and he be invested with the title to the same. In this suit Ledbetter also asserted an additional title, which accrued as follows:

Pending the appeal of the first suit between these parties, the annual state and county taxes, levied and assessed against the property in controversy, for the years 1871 and 1872, being unpaid, the state of Texas and Fayette county instituted in the district court of that county a suit for their recovery, and to foreclose the tax lien on the property against all the parties to the present suit, and on the 21st of November, 1874, recovered a judgment against Burns and wife for the taxes due on the property, and all penalties and costs of suit, and a decree against all the defendants to the tax suit (being the plaintiff and defendant to this suit), foreclosing the tax lien, and condemning the property in controversy to be sold to pay the taxes, costs and penalties. On the 19th of December, 1874, an execution or order of sale was issued on the tax judgment, and placed in the hands of the sheriff of Fayette county, who, as directed by the order of sale, sold the property in controversy again to the appellant, Ledbetter, for the sum of $152.22, and made a deed conveying it to him.

On the 26th day of April, 1875, Burns and wife made a tender to Ledbetter of the amount he paid in the tax sale, and twenty per cent. interest thereon, for the redemption of the lots. This he refused to accept, and Burns and wife deposited the same with the clerk of the district court wherein the suit was pending, as a standing tender to Ledbetter.

The cause was tried and resulted in a verdict and judgment against Ledbetter for the lots, and in his favor against J. R. Burns for the money paid at the execution sale by him, but refusing to subrogate him. Both he and Burns appealed and assigned errors.

*Timmons & Brown*, for appellant.

*J. B. Burns*, for himself, assisted by *Eldon Burns* and *Walde Burns*.

WATTS, COMMISSIONER.— The appellant, Ledbetter, claims the lots in controversy, first, under the sheriff's sale made by virtue of the judgment, in favor of Doxey's administrators against Burns and wife, foreclosing the vendor's lien upon the same. Secondly, by and through the condemnation and sale of the lots for the taxes due thereon.

He purchased the lots at sheriff's sale under the Doxey judgment, after an appeal had been taken and perfected by Burns and wife, and while that appeal was pending. The bond given by Burns and wife to perfect this appeal was for costs and damages, and conditioned as prescribed by art. 1493, Pasch. Dig., then in force. That article is in substance, that if a party is not able to give a supersedeas bond, he may, nevertheless, appeal, by giving security for no more than the costs and damages of the appeal; and in such cases the judgment of the court below is made to operate as a lien upon all the property of the appellant. And it is further provided that the sheriff shall take possession of the personal property of the appellant, and hold the same or so much thereof as will be sufficient to satisfy the judgment of the appellate court, during the pendency of the appeal, unless the appellant should give bond with security to the sheriff for the forthcoming of the property.

It is contended by appellant that the appeal bond given by Burns and wife was not, in amount, sufficient to secure the costs and damages of appeal. That identical question was determined by the supreme court in the case of Ledbetter *v.* J. R. & Adelia Burns, 42 Tex., 508, and the bond held to be sufficient. The construction of the article cited above, contended for by appellant, appears to us untenable. It is not claimed that an appeal taken and perfected under it does not suspend the judgment or the power of sale thereunder; and that notwithstanding such an appeal has been perfected and is pending, that execution or order of sale may be issued by virtue of the judgment, and that a sale made thereunder of the appellant's property would vest title in the purchaser. The constitution conferred the right of appeal, and in the enactment of the statute under consideration, the legislature was providing for the mode and manner of the exercise of that right. The object and purpose of this provision was to enable the poor and unfortunate litigant the exercise of the right of appeal, trammelled with just such restrictions and no more, as are necessary in protecting the rights of the judgment creditor. Its spirit is that of protection to, and fostering care of, this class of citizens and litigants, with which the law-making power should ever be in sympathy. Its purpose was to confer rights and not to impose burdens; and to reach a correct construction of this provision, we must keep in view that such was the spirit and intention that actuated the legislature in passing the law.

Now if, as construed, an appeal perfected in this mode left the judgment creditor free to run executions or orders of sale, at his own pleasure, notwithstanding the pendency of such appeal, why did the legislature provide that the judgment should operate as a lien upon all the property of the appellant? Why provide that the sheriff should seize and hold his personal property pending the appeal?

Such a construction would give the judgment creditor the option, either to have the sheriff seize and hold with an iron hand all the property of his debtor, or at his whim or caprice, cause the same to be sacrificed at public sale, at any time during the pendency of the appeal. This, instead of conferring protection and benefits upon the poor and unfortunate, would be heaping burdens upon the already overburdened; and besides, imposing penalties upon the exercise of the constitutional right of appeal. Such was not the legislative intent. An appeal taken and perfected under that provision of the statute does suspend the power of sale while it is pending. We fully concur with the supreme court in Ledbetter v. Burns, 42 Tex., 508, when the identical question was before that court. And it was then decided that the appeal of Burns and wife, the same now under consideration, did operate a suspension of the power of sale, and that Ledbetter did not get title to the lots by reason of that sale and purchase. See Moore v. Muse, 47 Tex., 216.

The judgment of condemnation and sale made thereunder, for the taxes due upon said lots, were regular, and vested the title thereof in Ledbetter, subject to whatever conditions and limitations were imposed by law.

The constitution of 1868–69 prohibited the sale of land for taxes due thereon, except under a decree of a court of competent jurisdiction; and imposed upon the first legislature the duty of making suitable provisions for the condemnation and sale of all lands for taxes due thereon; also for the condemnation and sale, every five years thereafter, of all lands, the taxes upon which had not been paid to that date. See secs. 21, 22, art. XII, Const. of 1868–69.

An inspection of the tax laws of 1870–71 will disclose the fact that the twelfth legislature did not make adequate provisions for the condemnation and sale of lands for taxes due thereon; and acting upon this view of the

subject, the thirteenth legislature passed the act entitled "An act providing for the condemnation and sale of land for delinquent taxes," approved June 2, 1873. See General Laws, 1873, pp. 187–193.

The act provides that the comptroller shall, immediately after the 1st of January, 1874, and every five years thereafter, make out a list of all delinquent taxes that are unpaid at that date, with such description of the property on which such taxes have been assessed as may be necessary to identify the same, and to give the name of the person or persons against whom the taxes were assessed, and to forward such list to the sheriff of the proper county. This list forms the basis for the adjudication that is to result in the condemnation and sale of the land for the taxes due thereon. In short, this act covers the entire subject matter, and makes ample provisions for the condemnation and sale of land for taxes, as required by the constitution. All taxes then or thereafter to become due are embraced within the terms of that act; the operation of the act is not, as contended, confined to taxes thereafter to become due, but, by express terms and direct and plain language, includes all taxes then due and thereafter to become due. Under its provisions the comptroller furnished the list to the sheriff of Fayette county that formed the basis of the suit that resulted in the condemnation and sale of the lots in controversy. It was under this act that the condemnation and sale were made, and that Mrs. Adelia Burns made the tender to Ledbetter for the redemption of the land from the tax sale. The effect of that tender must be determined by its provisions.

In the third section of the same, it is provided that "any party or person interested in the land sold for taxes, may, at any time within twelve months after the day of sale, redeem said land by paying to the purchaser, or to his assignee or vendee, the full amount of the purchase money paid for said land at said tax sale, with one year's

interest on same, at the rate of twenty per cent. per annum."

The record discloses the fact that Mrs. Adelia Burns, a party interested in said lots, within three months after the day of sale, did tender to appellant Ledbetter the amount of the purchase money that he paid for said lots at the tax sale, with twenty per cent. interest thereon, for the redemption of the same from said tax sale, and, upon his refusing to accept the same, she caused the money tendered to be deposited with the clerk of the court in which this suit was then pending, as a standing and continuous tender to appellant for the redemption of the lots.

The tender thus made *ipso facto* worked an immediate redemption of the lots from the tax sale, and left the appellant Ledbetter with no title to the same by reason of that purchase.

The question next in order, presented for our consideration by the assignment of errors, involves the right of appellant to reimbursement of the money paid by him on the invalid execution sale, and the mode and remedies in securing the same.

In the consideration of this phase of the case, we shall not undertake the impracticable task of attempting to reconcile the conflicting decisions upon the question made by the supreme courts of the several states. An examination of these decisions discloses the fact that they are irreconcilable. On the one hand, the courts, as in Pennsylvania and some other states, ignore the doctrine that a purchaser at a void judicial sale is entitled to recover the money paid by him, and to be subrogated to the judgment lien, to the satisfaction of which his money has been applied; these courts adhering strictly to the common law doctrine of *caveat emptor*, in reference to judicial sales.

Other courts, as in Mississippi, Louisiana and Ken-

tucky, ignore this doctrine of *caveat emptor* entirely in
this class of cases, and apply even a more liberal rule than
the civil law rule of substitution or subrogation. And
without regard to the intent or wrongful act of the pur-
chaser at such sales, if the money paid by him has been
applied to the payment of the judgment, in whole or in
part, then he is entitled to recover the same from the de-
fendant in the judgment, and to be subrogated to the lien
and rights thereof to the extent of the payment. Various
decisions of the several states may be found, which in one
way and another cover the entire ground between these
extremes.

We will, however, confine our examinations to the de-
cisions of our own supreme court, and attempt to draw
from them the correct rule to be applied to this case.

In Howard *v.* North, 5 Tex., 290–317, a full discussion
of some phases of the question will be found. The court
there held that the sheriff's sale and deed were void, and
added: "But here an important question arises, as to the
effect which this decision, avoiding the sale and con-
veyance, should in law, and according to the course of
our system of procedure, have on the rights of the par-
ties. We have repeatedly determined that the legal and
equitable rights of parties litigant, in relation to the subject
matter of a controversy, should as far as practicable be
set up and determined in a single suit," etc., etc. "That
he (defendant) should not be compelled to restore posses-
sion until the purchase money, which he had paid for the
benefit of the plaintiffs, and by which the judgment
against them had been discharged, should be reimbursed
and he indemnified. There is no charge, nor any pre-
tense or evidence, that the defendant has been guilty of
any fraud in the transaction." And in the further dis-
cussion of that case the court, say: "His equity rests,
not upon the want of knowledge as to title in the prop-
erty, but on the ground of his having discharged a judg-

ment against the defendant, for which he stood chargeable by a purchase made under the coercive process of the law, and therefore has an equitable claim to reimbursement by the defendant in execution." This case is approvingly cited in the case of Horan v. Wahrenberger, 9 Tex., 313.

The case of Baily v. White, 13 Tex., 114, is where the defendant in the execution brought suit to set aside the sheriff's sale, and for the recovery of the land from the purchaser. The court held the judgment was valid, but that the execution and sale was void, and that the purchaser was entitled to recover the purchase money paid by him, and for the value of improvements put upon the land. In the discussion of that case the court say: "Where a sale has been made on an invalid execution, issued on a valid judgment, and the money paid has been applied to the satisfaction of the judgment, and there has been no fraud, the purchaser will not be compelled to restore the property purchased until reimbursed the amount paid by him."

Andrews v. Richardson, 21 Tex., 297, is a case where the purchaser at judicial sale brought suit to enjoin a writ of possession against his tenant, issued by a justice court, and the defendants in their answer sought to avoid the sale on the ground that there had been no appraisement as required by law. And by way of replication the plaintiff asked, that if for any cause the sale should be adjudged invalid, that then he be reinstated in his original right in the decree of foreclosure, and that he have execution. The court held that the sale was valid, but said that if it was not, the plaintiff would have been clearly entitled to the relief sought, provided he was the beneficial owner of the judgment; but if not the owner of the judgment, he would have been entitled to be reimbursed for the money he had paid.

The defendant in the void execution brought suit to set

aside the sale. In Herndon v. Rice, 21 Tex., 455, the court held the sale void, and remarked, "But Herndon having paid forty-one dollars in satisfaction of Rice's debt, should not the court decree this money to be refunded?"

In McDonough v. Cross, 40 Tex., 285, the court used this language: "It consequently follows, that appellant McDonough acquired no title or interest in the land by his purchase at execution sale. As he discharged, however, a valid judgment debt against the estate, which was a charge against the devisees, we think he was subrogated to the rights of the judgment creditor, and he could by the proper presentation of his rights have subjected the land to the payment of the judgment in preference to any claim upon it by the devisees."

In Peters v. Clements, 52 Tex., 140, the court held that "the purchaser at a sale under a judgment foreclosing a vendor's lien on the entire tract of land originally sold, is entitled to be subrogated to the rights of the original vendor as against the purchaser of a portion of the land, who bought from the vendee before the proceedings to foreclose were begun, and who was not made a party to such proceedings. He may have that portion of the land claimed by the second vendee, who was not a party to the foreclosure proceedings, resold to pay its proportion of the amount paid at the foreclosure sale for the whole tract."

These constitute the principal cases in which our supreme court has adjudicated the question. And from them it is concluded that where the judgment is valid, but execution or sale is invalid, and the purchaser is not a party to the judgment, and is guilty of no fraud in the purchase, and the money he paid has been applied to the judgment, he will be entitled to hold the property until he is reimbursed.

And in case the plaintiff in the execution is the purchaser, he will be restored to his original rights in the judgment.

Ledbetter, the purchaser at this invalid sale, was the attorney of record for the plaintiff in the Doxey judgment, and owing to that fact he is so identified with the case that the law charges him with notice of all irregularities in the judgment and proceedings thereunder. See Stroud v. Casey, 25 Tex., 740.

His position is more nearly allied to that of the plaintiff in the judgment, than that of stranger to the record. We presume, from the record, that Ledbetter honestly believed that the appeal taken by Burns and wife did not suspend the judgment or power of sale thereunder. The statute under which the appeal was perfected had not theretofore been construed by the supreme court in this particular, and the bar was divided in opinion as to the effect of such an appeal. It is true that no one is excusable for his ignorance of the law; but because Ledbetter made an honest mistake as to the construction of that statute, the law will not impute to him bad faith, on account of the mistake. He purchased the property believing that the sale was valid, and paid to the sheriff the money bid. The greater part of this money was applied to the judgment against Burns and wife, in which the vendor's lien was foreclosed upon the property. His rights and equities do not rest upon his want of notice of the irregularities in the sale, but on the grounds that he has in part discharged a valid judgment against appellee, by a purchase made under the process of the law, and in which he was not guilty of fraud. In our opinion he is entitled to be reimbursed in the amount so paid by him, and it would certainly be unjust to permit appellees to take and hold the property discharged of the foreclosure judgment by the money of appellant, and refuse to reimburse him. Such a doctrine, it seems to us, would be repugnant to natural justice and the dictates of common honesty.

But, owing to the manner in which Ledbetter came into the possession of the property, and the fact that he was

attorney of record for the plaintiff, in the judgment, and the further fact, that the money paid by him only liquidated the judgment in part, we are of the opinion that he is not entitled to hold possession of the property until he is reimbursed. It is more consonant with justice and right, to subrogate him to the lien of the original judgment, with order of sale, for the amount he is entitled to recover of appellee Burns on account of the payment on the judgment made with his money.

It appears from the record that Ledbetter has held the possession of the property, and enjoyed the fruits and revenues thereof, for several years. Burns and wife are certainly entitled to recover from him the rental value of the property during that time.

To avoid a multiplicity of suits, and enable the parties to settle all their rights with reference to the matter in the one suit, the parties ought to set up all these rights by their pleadings, and an account between the parties thus taken, and for whatever balance may be due to appellant Ledbetter from J. R. Burns, if anything, a judgment should be rendered therefor, and appellant to that extent should be subrogated, as heretofore stated.

That portion of the judgment in which the title to the property in controversy is adjudged to be in Adelia Burns, and not in appellant Ledbetter, is in all things affirmed.

That portion of the same in which Ledbetter recovers a monied judgment against J. R. Burns is reversed and remanded, with leave to both parties to amend their pleadings; and that such other proceedings may be had as will result in doing justice to the parties, as indicated in this opinion; and that W. H. Ledbetter and J. R. Burns each pay the costs incurred by reason of their respective appeals.

REVERSED AND REMANDED.

[Opinion delivered March 8, 1881.]