## J. E. FAIRES V. M. COCKERELL ET AL.

### No. 290.

**1. Parol Agreement—Written Contract.**

Contract for bonus to railway company. The railway company under the contract had right to locate its depot. At time of signature of contract by one of the makers, he understood that the depot was to be placed upon his lands. Another location was selected. *Held*, that he could not defeat his obligation by showing the parol agreement as to location of the depot upon his lands ............................................................... 431

**2. Subrogation—Sureties—Cosureties.**

The object of the rule subrogating the surety to the debt, upon his paying it, is to give the paying surety all the remedies that the creditor had against the principal debtor. There is no advantage in having the unsecured debt assigned, as a suit upon the implied promise growing out of the relations of the parties is as effective, and is a more simple proceeding ............ 434

**3. Same—Same.**

The surety can recover from his principal only the amount that he has paid, and from a cosurety his proportional part of what has been paid on the debt. Subrogation gives indemnity, and no more. Right of action accrues upon each payment. And if at the time of payment the surety was legally

bound, he may recover from the principal or a cosurety, although they may be discharged as to the original debt by limitation...................... 434

**4. Implied Promises.**
Where two or more persons enter into an obligation as principal, or as principal and sureties, the law implies duties by principal to sureties, and between cosureties ................................... ............................ 435

**5. Co-obligors—Cosureties—Right of Action.**
When the creditor has no security from either of the payors, and the debt itself holds no lien upon property, nor is entitled to priority over other debts of the debtor, the payment of the debt by a co-obligor or surety satisfies the original debt, and the party paying has his right of action against the others upon the implied promise raised by law for his reimbursement according to their several liabilities ................................... 436

**6. Same—Subrogation.**
When the creditor has a security from the principal obligor, or if the debt itself constitutes a lien upon property of the debtor, or if from its nature it be entitled to priority in payment over other debts of the debtor, the person paying the debt, not being a volunteer, will be subrogated to the securities, liens, and priorities of the creditor to the extent that he makes payment of the debt. And if it be necessary from the character of the lien or security, in order to do full justice between the parties, equity will treat the original debt as subsisting, so far as may be necessary to realize upon the security...................................................... 436

**7. Limitation.**
One of several co-obligors discharging more than his share of the obligation, upon payment, has right of action against other obligors for reimbursement of his payment beyond his pro rata share. The right not being evidenced in writing, is barred by limitation of two years ........................ 437

**8..Cause of Action.**
Right of action accrues against co-obligor when he has been released from original contract, either by payment by plaintiff or by his assuming the debt. If the latter, limitation would run from time it was assumed. See example...................................................................... 438

**9. Case Adhered to.**
Holliman v. Rogers, 6 Texas, 91, adhered to, that payment of a note by a surety extinguishes the note, and the surety has remedy by suit upon the implied promise, and not by suit upon the note ........................ 438

**10. Cases Overruled.**
Sublettt v. McKinney. 19 Texas, 439, and all other cases in conflict with Holliman v. Rogers, overruled......................................... 438

ON MOTION FOR REHEARING.

**11. Abstract Questions.**
An abstract question not raised by the facts in the record will not be considered. See illustration ............................................... 438

**12. Right of Action.**
Co-obligors paying more than their share upon the contract have right of action for such payment in excess of their liability. Of this they are chargable with notice from the facts ...................................438, 439

ERROR to Court of Civil Appeals for First District, in an appeal from Fayette County.

*Moore & Duncan,* for plaintiff in error.—1. The court erred in excluding testimony as to the agreed locality for depot grounds, which was changed after the obligation was signed. This operated to the injury of plaintiff in error.

2. The cause of action was barred by limitation of two years and of four years. Tutt v. Thornton, 57 Texas, 35; Murphy v. Gage, 21 S. W. Rep., 396.

*Brown, Lane & Jackson,* for defendants in error.—1. Parol evidence was inadmissible to alter the subsequent written obligation. Wooters v. Railway, 54 Texas, 299; 1 Sayles' Civ. Stats., 697, rule 20; Hunt v. White, 24 Texas, 651; Belcher v. Mulhall, 57 Texas, 17; Bruner v. Strong, 61 Texas, 555.

2. No part of the cause of action was barred by limitation at the time of the filing of this suit; because (1) four years of time had not elapsed since any of the payments were made by the appellees, and the suit was upon the written contract; (2) two years of time had not passed since the completion of the common undertaking entered into by appellant and appellees and others; (3) there were no hostile claims, but there were confidential relations existing between appellant and appellees, such as naturally quiet suspicion, and in such cases lapse of time has no adverse effect in so far as the statutes of limitations are concerned; (4) the cause of action would not have been barred by limitation against the San Antonio & Aransas Pass Railway Company in a suit against appellant and appellees at the time of the institution of this suit. Sublett v. McKinney, 19 Texas, 438; Beck v. Tarrant, 61 Texas, 404; Glasscock v. Hamilton, 62 Texas, 153; 4 Am. and Eng. Encyc. of Law, p. 3, and note; Story on Part., 6 ed., secs. 221, 229; Wheeler v. Young, 9 N. E. Rep., 531.

BROWN, ASSOCIATE JUSTICE.—The following statement of the facts is sufficient for an understanding of the questions presented:

J. E. Faires and the defendants in error, with other persons, were appointed by a meeting of citizens as an executive committee to secure the right of way for the San Antonio & Aransas Pass Railroad through Fayette County, and depot grounds at the town of Flatonia, in that county, and they gave to that railroad company a written agreement binding themselves to secure the right of way and depot grounds, and to pay for the same.

The contract provided, that the railroad company should select the grounds; but at the time the agreement was signed, Faires understood that the depot was to be located upon or near lands belonging to him, upon which understanding he signed the contract. The railroad company made the selection at that point, but afterwards changed the depot to another part of the town, and upon the trial Faires pleaded and sought to prove the facts; the court excluded the evidence, upon

objection that such testimony tended to vary the terms of the written contract.

The other parties to the contract, or some of them, paid out money for the right of way, depot grounds, and expenses in procuring them, some of which payments were made more than two years but not four years before the bringing of the suit. The depot was located, and the contract with the railroad company was completed in 1887, the suit being brought in 1893, by the plaintiffs, against Faires and others, to recover their pro rata part of the money so paid. Faires pleaded the statute of four and two years' limitations. The court below rendered judgment against Faires and others for the amount due. Faires alone brings the case to this court, upon two questions:

1. That the court erred in excluding the evidence as to the understanding that the depot would be located as he claimed.

2. That the court erred in holding that the plaintiffs' claim, or part of it, was not barred by the statute of limitations.

Upon the first question, the Court of Civil Appeals rightly held that the evidence was not admissible; and it is unnecessary for us to discuss that question.

On the second question, the Court of Civil Appeals held, that the plaintiffs' cause of action was founded upon the written contract entered into with the railroad company, and that it required the expiration of four years from the date of each payment by the plaintiffs to bar their claim for contribution. This presents to us the questions following:

1. Was plaintiffs' claim founded upon the written contract, or upon an implied promise from each signer to reimburse the other signers of that contract for payments made by them in excess of their proportional part thereof?

2. What period of limitation applies to the plaintiffs' claim for contribution?

Our statute of limitations, so far as it affects the question before us, is as follows:

"Article 3203. There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description: * * * (4) Action for debt where the indebtedness is not evidenced by a contract in writing."

"Article 3205. There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description: * * * (1) Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing."

In Holliman v. Rogers, 6 Texas, 91, Holliman, as principal, and O'Neill and Grace, as his sureties, made a note payable to Frank, or bearer. Grace paid the note, and suit was instituted in the name of Rogers against Holliman to recover the amount of the note. Rogers sued for benefit of Grace, though it does not so appear directly in the

case. The suit was upon the note, and the question was directly presented as to whether or not a suit could be maintained upon the note under such circumstances. The court, Judge Lipscomb delivering the opinion, held, that when Grace paid the note it was extinguished, and no suit could be maintained upon it, but that the suit should have been upon the implied promise which the law raises from Holliman to indemnify the surety, in case he paid the debt.

Sublett drew a draft in favor of General Sam Houston on McKinney and Williams, who accepted the draft, and paid it on the 26th day of November, 1841. Suit was filed on the draft against Sublett's administrator, he having died, September 2, 1844. McKinney and Williams had no funds of Sublett in their hands, and the former accepted the draft for his accommodation. Sublett pleaded the statute of limitations of two years. The Supreme Court held, that the right of action of the accommodation acceptor was upon the draft, and that it required four years to bar the action. Sublett v. McKinney, 19 Texas, 439.

That case would justify the conclusion drawn by the learned judge who wrote the opinion of the Court of Civil Appeals in this case, that the period of limitation would be four years, and would run from the date of the payment. The opinion in Sublett v. McKinney was written by Judge Wheeler, who was on the court at the time the case of Holliman v. Rogers was decided. The same question was not before the court for decision in Close v. Fields, 2 Texas, 232, but Judge Wheeler, who wrote that opinion, said, in discussing a kindred question: "It may, however, be here remarked, that according to the principles of liability of the drawer to the acceptor for accommodation, the acceptor can never sue on the bill; he must sue for money loaned or paid to the use of the drawer." Citing Chitty on Bills, page 537, in which it is said: ":In the case of an acceptor for the accommodation of the drawer, such acceptor, if he has been obliged to pay, may sue the drawer on his implied contract to indemnify him, but not on the bill itself." Dan. Neg. Inst., sec. 532.

Tutt v. Thornton, 57 Texas, 35, was decided by the Commission of Appeals before the law required the Supreme Court to approve their decisions, and is not therefore to be considered as an authority in the sense that it has been decided or passed upon by the Supreme Court. In that case, Tutt gave his note to Heckler, and before it was delivered, Thornton wrote his name upon the back of it for the accommodation of Tutt. He afterwards paid the note, and it was transferred to him, whereupon he sued Tutt upon the note, striking out his indorsement on the back of it. The court held that the cause of action was upon the note. In this case, the judge followed the case of Sublett v. McKinney.

In Carpenter v. Minter, 72 Texas, 370, Judge Collard, for the Commission of Appeals, held, that a surety who pays the note of his principal is entitled to sue upon the note and to recover all that the payee

of the note could have recovered, including attorney's fees, although the surety paid the note before suit, and the note provided for attorney's fees in case of suit. In that case it is said: "The right of the surety after payment of his principal's note was not on the implied assumpsit for the amount paid, but to sue on the note itself." The opinion was adopted by the Supreme Court.

Jackson v. Murray, 77 Texas, 644, was also decided by the Commission of Appeals after the law required the Supreme Court to approve their opinions. In that case, Justice Collard, delivering the opinion, held, that the cause of action of a surety against his cosurety for contribution was upon the implied promise, and not upon the note. The opinion was adopted by the Supreme Court.

Thus it will be seen, that the cases in our own court are in conflict upon this question, the authoritative decisions being Holliman v. Rogers and Sublett v. McKinney. It becomes necessary for us to settle the question upon authority and principle, for which purpose we will briefly examine the cases and cite some of the authorities.

In the case of Sublett v. McKinney, Judge Wheeler states the doctrine, that a surety who pays the debt of his principal is entitled to be subrogated to the rights of the payee as to all securities which he may have from the principal debtor, and from this premise he reasons to the conclusion, that this subrogation applies with equal force and justice to the debt itself. In support of this proposition or conclusion, he cites Ex Parte Crisp, 1 Atk., 133; Morgan v. Seymour, 1 Ch., 64; Parsons v. Briddock, 2 Vern., 608; Lumpkins v. Mills, 4 Ga., 343.

In the case of Ex Parte Crisp, the question was as to the right to have the securities of the principal creditor assigned upon payment of his debt, and the court held, that such a right would in a proper case be enforced. But in that case the assignment of the debt itself was not involved.

We have not been able to find the case of Morgan v. Seymour, and suppose it is a mistake in the citation.

The case of Parsons v. Briddock likewise involved the right to an assignment of an independent security. The plaintiffs were the sureties of the defendant in the judgment, and he being arrested, gave bail. Judgment being rendered upon the debt, and against the bail, the sureties paid the judgment and brought an action to compel the assignment of the judgment against the bail.

Lumpkins v. Mills, 4 Georgia, 343, involved the question of subrogation to the very debt, it being a specialty, and therefore entitled under the laws of that State to priority in payment out of the estate of the deceased debtor. The court held, that the surety was entitled to that remedy, upon which point there is much conflict in the authorities.

Before examining the authorities, we will see if the doctrine of subrogation can be logically carried to the extent that Judge Wheeler extended it in Sublett v. McKinney.

Where there is no independent security held by the creditor, what is the reason for holding that the surety is subrogated to the debt? The object of the rule of subrogation is to give to the paying surety all the remedies that the creditor has against the principal debtor. There is no advantage in having the unsecured debt assigned. A suit upon the implied promise growing out of the relations of the parties is just as effective for that purpose, and a more simple proceeding. If the surety pays the half of the debt, he is only entitled to recover that much, and he can not recover that upon the note or contract without other proof, for he must show how much he has paid. It is not therefore true that he is subrogated in that case to the position of the creditor who recovers upon the contract according to its terms, without other proof. The result is, that under this view of the doctrine of subrogation the surety is not subrogated to all of the rights of the payee, but only partially so—that is, to the extent that he has paid; and we must read the contract as an obligation to pay one-half of its face, when the language expresses a promise to pay the whole sum. There are many difficulties in the application of this doctrine, some of which we will briefly notice.

The surety can recover from the principal debtor only the amount that he has paid, and from a cosurety only his proportional part of what has been paid on the debt. Subrogation gives indemnity, and no more. Batsell v. Richards, 80 Texas, 507; Brandt on Surety., secs. 176, 177.

If the surety makes different payments on the debt, his right of action accrues upon each payment; therefore, the statute of limitations begins to run against the surety paying at the time of each payment. Brandt on Surety., sec. 199.

If at the time the payment is made the surety making such payment is himself legally bound to pay the debt, he may recover from the principal debtor or cosurety, although at the time the payment was made by him the principal or cosurety was discharged from the debt by limitation. Peaslee v. Breed, 10 N. H., 489; Boardman v. Paige, 11 N. H., 431; Crosby v. Wyatt, 23 Me., 156; Maxey v. Carter, 10 Yerg., 521; Wood v. Leland, 1 Metc., 388; Preslar v. Stallworth, 37 Ala., 402; Reeves v. Pulliam, 7 Bax. (Tenn.), 119; Marshall v. Hudson, 9 Yerg., 57.

In the case of Preslar v. Stallworth, supra, the note was given in 1837, upon which Preslar and Stallworth were cosureties. Suit was filed against the principal and both sureties, but Preslar not being served, it was discontinued as to him. Judgment was rendered against the principal and Stallworth in 1842, but was not paid by Stallworth until 1854, when he paid $1000 as a compromise, and sued Preslar for contribution. The Supreme Court of Alabama held that Stallworth was entitled to recover, the statute of limitations not beginning to run against him until the payment was made. To the same effect is the case of Maxey v. Carter, cited above.

Let us suppose that A, as principal, and B, as his surety, execute their note to C for $2000, payable in one year from date, and at the time the note falls due A fails to pay, but B pays on it at maturity $500. At the end of the second year from maturity B pays another $500, and at the end of the third year he pays $500, paying the remainder one day before the note would be barred by limitation. One month after the last payment B sues A upon the note. Under the doctrine that he is subrogated to all the rights of the payee C, and that his cause of action arose at the date of each payment, and is upon the note, he has upon the same written instruments three periods of limitation. Five hundred dollars is barred; upon $500 he has two years yet to run; upon another sum three years, and upon the remainder four years.

If B had made no payment until the last one, that is, one day before the note would be barred he pays the whole, then B would have four years from that date to sue upon the note, and it would run for eight years, instead of four, as prescribed by the statute.

If at the maturity of the note, or at any time before it would be barred, A is insolvent, C might sue B and recover judgment against him. Suppose that under these circumstances C sues B the day before the note would be barred by limitation, and, B defending against the suit, the litigation is protracted for four years, when judgment is rendered, after which C sues out his executions regularly and keeps his judgment alive for four years more, when he succeeds in making his money out of B's property. Under the doctrine asserted, B could not sue A on the judgment, because he is not a party to it, but must sue on the note, and he has four years from the date of payment, which was made twelve years after the note became due, and in the hands of B the note will be a good claim sixteen years after it became due.

Subrogation is but an equitable assignment, and puts the parties where they would be if an actual assignment had been made; but in this case subrogation would not put the surety B in the shoes of C, but would confer on him a right that C never had, and could not assign under the law.

Mr. Story, in his work on Equity Jurisprudence, section 499c, says: "The error of the contrary opinion (that the surety is subrogated to the debt), if indeed upon the enlarged principles of equity any there be, seems to have arisen from confounding the right of the surety on payment of the debt to be substituted for the creditor, and to have an assignment of any independent collateral securities, with the supposed right to have the original debt assigned." This is a reasonable solution of the difficulties that grow out of the conflict in language used, more than in the results of decisions, for, as we will show hereafter, whenever this doctrine has been stated outside of our courts, or at least in most instances, the matter for adjudication was the right to be subrogated to the securities held by the creditor, and not the debt itself.

When two or more persons enter into a joint or joint and several obligation, by which they agree to pay a sum of money to or to do

something for another, the law implies a promise from each of such obligors to each of the others, that each will indemnify the other in case he pays or performs more of the obligation than his proportional part. If to such obligation there be one or more obligors, the law implies a promise from each of the principal obligors to each of the sureties, that they, the principal obligors, and each of them, will indemnify any surety that performs or pays any part of the obligation. If there be more than one surety on such contract, the law implies a promise from each surety to each other surety, that in case he shall discharge the obligation to an extent greater than his share, they will each reimburse him to the extent of the liability of each of them upon said obligation.

These promises are raised by the law at the time the contract is made, and grow out of the relations of the parties to each other. Such implied promises only arise in the absence of express agreements, for the parties may, by an understanding among themselves at the time, set aside this legal obligation, or limit it, just as they may agree among themselves.

From a careful examination of the authorities we reach the conclusion, that when the creditor has no security from either of the payors, and the debt itself holds no lien upon property, nor is for any reason entitled to priority over other debts of the debtor, the payment of the debt by a co-obligor or surety satisfies the original debt, and the party paying has his right of action against the others upon the implied promise raised by law for reimbursement, according to their several liabilities. Griffith v. Reed, 21 Wend., 505; Copis v. Middleton, 11 Eng. Ch., 128; Bryant v. Smith, 10 Cush., 169; Pray v. Maine, 7 Cush., 253; Kennedy v. Carpenter, 2 Whart., 344; Hopkins v. Farwell, 32 N. H., 425; Singleton v. Townsend, 45 Mo., 379; Smith v. Johnson, 23 Cal., 64; Ward v. Henry, 5 Conn., 595; Frevert v. Henry, 14 Nev., 191; Gieseke v. Johnson, 115 Ind., 308; Crisfield v. The State, 55 Md., 193; Bushnell v. Bushnell, 77 Wis., 435; Chipman v. Morrill, 20 Cal., 130; Sichell v. Carrillo, 42 Cal., 506; Louvall v. Gridley, 70 Cal., 510; Penniman v. Vinton, 4 Mass., 276.

When the creditor in such a contract has a security from the principal or obligor, or either of them, or if the debt itself constitutes a lien upon the property of the debtor, as a vendor's lien, or if from its nature it be entitled to priority in payment of other debts of the debtor, the person paying the debt, not being a volunteer, will be subrogated to the securities, liens, and priorities of the creditor to the extent that he makes payment on the debt; and if it be necessary, from the character of the lien or security, in order to do full justice between the parties, equity will treat the original debt as subsisting, so far as may be necessary to accomplish that end. Hodgeson v. Shaw, 3 Myl. & K., 341; Parsons v. Briddock, 2 Vern., 608; Berthold v. Berthold, 46 Mo., 557; Ex Parte Crisp, 1 Atk., 131; Stevens v. West, 1 How. (Miss.), 308; Waldrip v. Black, 74 Cal., 409; Bank v. Ackerman, 70

Texas, 315; Fleming v. Beaver, 2 Rawle (Pa.), 128; Rodgers v. Mc-Cluer, 4 Gratt. (Va.), 81.

Perhaps the courts of no State have gone further in applying the doctrine of subrogation than has the court of this State, of which we cite a few instances:

One who discharges the vendor's lien upon lands, even the homestead, either by paying as surety, or at the request of the debtor, or at a judicial sale, which, for irregularities in the process, fails to convey the title, is entitled to be subrogated to the lien of the creditor to the extent of the payment so made. McDonough v. Cross, 40 Texas, 285; Burns v. Ledbetter, 54 Texas, 385; Land and Loan Co. v. Blalock, 76 Texas, 85.

The sureties on a sheriff's official bond, who pay a judgment on account of the failure of the sheriff to return the writ or make collection of the debt, are entitled to be subrogated to the lien of the judgment creditor. Sayles & Bassetts v. Taylor, 36 Texas, 313.

A surety on an appeal bond who pays the judgment after affirmance, is entitled to be subrogated to the rights of the plaintiff in the judgment. Black v. Epperson, 40 Texas, 180.

A purchaser at a sale by a guardian, who pays the purchaser money, which is appropriated to the payment of debts against the minor's estate, is entitled to be reimbursed for such payment before the minor can recover the property, although the sale did not pass the title. Harrison v. Ilguer, 74 Texas, 86.

These cases do not bear directly upon the question under consideration, but we cite them to show that our decisions recognize the doctrine of subrogation to its fullest extent.

It has been held by our court and others, that where one is subrogated to the securities held by the creditor, he is not entitled to recover the rate of interest expressed in the judgment or note which is the evidence of the debt. Burns v. Ledbetter, 56 Texas, 282; Close v. Fields, 2 Texas, 232; Johnson v. Smith, 23 Cal., 64; Waldrip v. Black, 74 Cal., 409; Bushnell v. Bushnell, 77 Wis., 435. The amount of the payment made, with legal interest, is the measure of recovery.

Applying these principles to this case, we hold, that the plaintiffs and Faires, being joint obligors in the contract made with the railroad company, each was liable to the other for contribution to indemnify him for any payments made in excess of his share. Whenever either made payments to an amount in excess of his share, he had a right of action upon the implied promise of all of the others for reimbursement, and the statute of limitations commenced to run against such right of action from the date of each payment made after the pro rata share of such party had been paid.

The right of action in this case being upon the implied promise arising out of the relation of the parties, and not upon the written contract, which promise is not evidenced by writing nor founded upon a written contract, the cause of action thereon was barred in two years

from the date when the right of action upon each payment accrued. Wood v. Leland, 1 Metc., 387; Singleton v. Townsend, 45 Mo., 379; Chapman v. Morril, 20 Cal., 130; Penniman v. Vinton, 4 Mass., 275.

It does not clearly appear whether the notes and debts paid off by plaintiffs were contracted as a committee, or such as they had given in lieu of the debts so contracted; that is, whether or not the notes paid were not notes of plaintiffs given upon their individual responsibility, in satisfaction of those given originally as a committee. If the debts when paid were not barred, and were the debts of the committee, the statute would run from the date of payment; but if plaintiffs gave their individual notes in lieu of and as satisfaction of the committee obligations, then the statute would run from the date of such substitution, because it was, as to Faires, a satisfaction of the original debts. Brandt on Surety., sec. 249.

The case of Holliman v. Rogers announced the correct doctrine, and the case of Sublett v. McKinney, being in conflict with that decision and with this, is therefore overruled, as well as each case which has followed it.

The District Court and Court of Civil Appeals erred in holding that the action was upon the written contract, and that it required four years from each payment to bar plaintiff's action, for which errors the judgments of said courts are reversed, and this cause is remanded for trial in accordance with this opinion.

*Reversed and remanded.*

Delivered May 20, 1895.

### ON MOTION FOR REHEARING.

BROWN, ASSOCIATE JUSTICE.—Defendants in error base this motion upon the proposition, that the contract entered into by plaintiffs and the defendants, as joint obligors, was indefinite as to the amount which would be required to be paid to accomplish the purpose of the contract, and therefore the cause of action in favor of one of the obligors against his co-obligor would not arise, and the statute of limitation would not commence to run until the matter had been fully determined, so that each party could know for what amount he was legally bound.

The foregoing proposition of law was not presented in the original presentation of this case, and we do not find that the facts as developed are such as to justify this court in determining the correctness of the proposition presented.

We are governed by the facts as found by the Court of Civil Appeals, and there are facts necessary to be found in order to apply to this case the law, as contended for by the defendants in error, which are not stated in the findings of the Court of Civil Appeals. We believe that the principles announced in the original opinion are applicable to this case in all of its different phases, and therefore we decline to express any opinion upon the abstract proposition presented.

Admitting all that the defendants in error claim upon this motion, some of the plaintiffs could have determined, and must have known, that they had overpaid the proportion for which they were bound under that contract before the time that the release was executed by the receivers of the railroad company, which being the case, each had a right of action for the amount so paid in excess of his share of the obligation.

The motion for rehearing in this case will be overruled.

*Overruled.*

. Delivered June 27, 1895.