FIRST NAT. BANK OF MERKEL et al. v. ARMSTRONG et al. (No. 7960.)

(Court of Civil Appeals of Texas. Ft. Worth. April 25, 1914. On Motion for Rehearing, May 30, 1914.)

1. EVIDENCE (§ 157*)—BEST EVIDENCE—NOTES —ORIGINAL OBLIGATION.

Where suit was brought for money advanced to pay a note executed by a bank after going into liquidation, by persons furnishing the funds to the liquidating bank to take up the note, the rule that a written instrument is the best evidence of its contents was not available to exclude testimony that the original obligation of the bank had not been paid at the time the bank went into liquidation, and that the note sued on was but a renewal of other notes evidencing an indebtedness created long prior to the liquidation.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 460–470; Dec. Dig. § 157.*]

2. BANKS AND BANKING (§ 281*)—NATIONAL BANKS—LIQUIDATION—LIQUIDATING AGENT —AUTHORITY.

A liquidating agent of a national bank, though authorized to pay its debts by the delivery of assets to creditors, has no authority to create a new and different liability either on the part of the bank or its stockholders.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1075–1079; Dec. Dig. § 281.*]

3. BANKS AND BANKING (§ 281*)—NATIONAL BANKS — LIQUIDATION — FUNDS — ADVANCEMENT.

In a suit to recover money advanced to the liquidating agent of a national bank to take up a note executed by him in renewal of a note executed by the bank for the money borrowed, plaintiffs would be subrogated to the rights of the creditor, and it was therefore immaterial that the liquidating agent had no authority to execute the renewal note.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1075–1079; Dec. Dig. § 281.*]

4. SUBROGATION (§ 7*)—SURETIES—NATIONAL BANKS—STOCKHOLDERS.

Stockholders of a national bank are sureties for the debts of the bank to the amount of their capital stock, and, having advanced funds to pay such debts, are subrogated to the rights of the creditors against the bank and its securities.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 17, 18, 21–29, 58, 77, 83, 92; Dec. Dig. § 7.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

5. SUBROGATION (§ 23*) — ADVANCEMENTS — NATIONAL BANKS—LIQUIDATION—MONEY TO PAY DEBTS—CONTRIBUTION.

Where B., though not a stockholder, participated in an advancement of funds to the liquidating agent of a national bank with which to pay an indebtedness to another bank, in order to consummate a scheme to take over the liquidating bank's assets for the benefit of another bank, such advancement was not the act of a mere volunteer, and he was entitled to subrogation and the same right with others participating in such advancement.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 60–66; Dec. Dig. § 23.*]

Appeal from District Court, Taylor County; Thos. L. Blanton, Judge.

Action by M. Armstrong and others against the First National Bank of Merkel and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

B. A. Cox, Cunningham & Oliver, and S. P. Hardwicke, all of Abilene, Harry Tom King, of Galveston, and Sayles, Sayles, & Sayles, of Abilene, for appellants. J. M. Wagstaff, of Abilene, for appellees.

DUNKLIN, J. In July, 1911, the First National Bank of Merkel went into voluntary liquidation, and C. L. Barker was appointed its liquidating agent. At that time it owed to the Commonwealth National Bank of Dallas a promissory note which had been theretofore executed for the principal sum of $10,000, to which was attached, as security, collateral of the face value of approximately $29,000. On December 28, 1911, and while in the process of liquidation, a renewal note for said indebtedness for the principal sum of $10,000 in favor of the Commonwealth National ·Bank of Dallas, with the same collateral as was attached to the original note, was executed by C. L. Barker, as president of the First National Bank of Merkel, Tex.; the signature being: "First National Bank of Merkel, Texas, by C. L. Barker, Pt." This note was made payable March 1, 1912, and was substantially a duplicate of the original note, with the exception of its date and the date of its maturity. When the note last mentioned fell due, the liquidating agent was unable to pay it for lack of funds. Thereupon M. Armstrong, John Sears, C. L. Barker, J. E. Faucett, and H. C. Burroughs advanced the money to Barker for the purpose of paying the note, and with which money so advanced the note was accordingly discharged and the collateral attached thereto turned over to the liquidating agent, who afterwards used the same in liquidating the bank's affairs. The persons so advancing the money instituted this suit against the First National Bank of Merkel to recover the amount of money so advanced by them, with 6 per cent. interest thereon from the date of its advancement, alleging the facts above recited, and further alleging that, at the time the money was so advanced, the Commonwealth National Bank of Dallas, the payee of the note, was threatening to sell the collateral held by it, and that the advancement was made in order to protect the First National Bank of Merkel and its stockholders and plaintiffs themselves, and that the advancement was made at the request of the defendant bank and its liquidating agent. The truth of those allegations was established by uncontroverted evidence; the request so made being from Barker, president and liquidating agent, to his coplaintiffs.

No answer was filed by the defendant bank, but W. R. Bigham, T. J. Coggin, and several other stockholders in the defendant bank filed pleas of intervention in their own behalf and in behalf of all other stockholders of the defendant bank, alleging that each and all of the stockholders were subject and liable to assessments against them to meet the obligations of the defendant bank, including any judgment that might be rendered in favor of the plaintiffs. Their pleas of intervention contained special exceptions challenging the authority of the president of the bank to execute the note which was paid off and discharged by plaintiffs, and also a general denial. From a judgment in favor of plaintiffs for amount sued for, interveners have appealed.

[1] Three notes were introduced in evidence, the first dated November 18, 1910, due December 31, 1910, the second dated January 4, 1911, due March 1, 1911, the third dated December 28, 1911, due March 1, 1912; the last note being the one paid off with the money advanced by the plaintiffs. The first two notes were stamped "renewed." Over objection urged by appellants, plaintiff Faucett was permitted to testify that the original obligation of $10,000 of the defendant First National Bank of Merkel to the Commonwealth National Bank of Dallas had not been paid at the time the defendant bank went into liquidation. The objection urged by appellants to the introduction of this testimony was that the original obligation was the best evidence of the matters so testified to by the witness. The note first mentioned appears to be the original obligation and was introduced in evidence. The rule invoked that a written instrument is the best evidence of its contents would not avail to exclude the testimony that the original obligation had not been paid at the time the bank went into liquidation.

[2] By several assignments of error it is insisted that neither the president of the defendant bank nor its liquidating agent had any legal authority to execute the note dated December 28, 1911, which was discharged by the money furnished by plaintiffs to the liquidating agent. The case of Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864, is the leading case cited by appellants

to support their contention. In that case it seems that creditors of a bank, which was put into liquidation, made settlement with the president of the bank after it went into liquidation by accepting from the president bills receivable belonging to the bank with the bank's written guaranty of payment indorsed thereon. In a suit by the creditors upon the bank's guaranty indorsed upon those obligations, it was held that the president had authority to settle with the creditors by transferring any assets of the bank, but that, in making such transfer, no new obligation could be imposed upon the bank, or upon its stockholders, and that the written guaranty of the bank was of no binding effect upon the bank, nor upon its stockholders. The following is an excerpt from the opinion rendered in that case:

"Payments, of course, may be made in the bills receivable and other assets of the bank in specie, and the title to such paper may be transferred by the president or cashier by an indorsement suitable to the purpose in the name of the bank, but such indorsement and use of the name of the bank is in liquidation and merely for the purpose of transferring title. It can have no other effect as against the shareholders by creating a new obligation. It does not constitute a liability, contract, or engagement of the bank for which they can be held to be individually responsible. Every creditor of the bank, receiving its assets under such circumstances, knows the fact of liquidation, and is chargeable with knowledge of its consequences; he takes the assets received at his own peril; he is dealing with officers of the bank only for the purpose of winding up its affairs. If he accepts something in lieu of an existing obligation looking to future payment, it must be from other parties. It is not within the power of the officers of the bank, without express authority, by such means to prolong indefinitely an obligation on the part of the shareholders, which is imposed by the statute only as a means of securing the payment of debts by an insolvent bank when it is no longer able to continue business, and for the purpose of effectually winding up its affairs. This is the very meaning of the word 'liquidation.'"

To the same effect is the companion case of Schrader v. Manufacturers' Bank, 133 U. S. 67, 10 Sup. Ct. 238, 33 L. Ed. 564, in which it was said:

"The agreement of Holmes (president and liquidating agent), made after the bank went into liquidation, to continue its guaranty upon the notes, a liability under which the People's Bank is now attempting to enforce against the stockholders, is not binding upon them, in view of what was said by this court in the case of Richmond v. Irons, before quoted."

In National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693, in discussing the legal status of a bank which had gone into voluntary liquidation, the court said:

"It is clearly, we think, the intention of the law that it should continue to exist, as a person in law, capable of suing and being sued, until its affairs and business are completely settled. The proceeding prescribed by the law seems to resemble, not the technical dissolution of a corporation, without any saving as to the common-law consequences, but rather that of the dissolution of a copartnership, which, nevertheless, continues to subsist for the purpose of liquidation and winding up its business."

In White v. Tudor, 24 Tex. 639, 76 Am. Dec. 126, it was said:

"It is also held, and may be regarded as settled, that a general authority to one partner, upon a dissolution, to settle the business of the firm does not authorize him to give a note in the name of the firm, for a firm debt, or to renew one given before the dissolution."

To the same effect are Brown v. Chancellor, 61 Tex. 437; Baptist Book Concern v. Carswell, 46 S. W. 858; 30 Cyc. 659, 667, 668, and 669.

[3] If the present suit was upon the last renewal note which was paid off by the plaintiffs, the foregoing authorities would be applicable. But the suit is not upon that note; it is a suit for money advanced for the purpose of discharging obligations of the defendant bank. The execution of the note dated December 28, 1911, was alleged to have been in renewal of a note in the same amount and to the same effect which had been executed by the defendant bank before it went into liquidation, and the petition concluded with a prayer for general relief. It was further alleged that the note had been paid; that it drew interest at the rate of 10 per cent., while plaintiffs only sought to recover the amount of the money advanced, with 6 per cent. interest thereon from the date of its advancement. If the president of the bank had no authority to execute the renewal note that was paid off, then there was no consideration for its acceptance by the payee, and the acceptance of that note would not operate to extinguish the original debt contracted before the bank went into liquidation. If it be held that the payee could not recover upon the last renewal note, it cannot be denied that it could have recovered upon the note outstanding at the time the defendant bank went into liquidation and for which the last renewal note was executed. Under the allegations in the plaintiffs' petition, and under the undisputed evidence, plaintiffs were subrogated to the same rights of the payee. It was shown without dispute that all of the plaintiffs, except H. C. Burroughs, were stockholders in the defendant bank at the time the money was advanced to the liquidating agent, and that the advancement was made for the benefit of the stockholders in that bank and at the request of C. L. Barker, its president and liquidating agent, and that plaintiffs Faucett and Sears were members of its board of directors. It further appears from the evidence that, at the time the stockholders of the defendant bank passed a resolution to put that bank in liquidation, another bank, known as the Southern National Bank of Merkel, was in the process of organization, and had offered to purchase the bank building with its furniture and fixtures belonging to the defendant bank, and had also offered to assume and pay amounts due by the defendant bank to its depositors, as well as such other obligations of the bank as might be authorized by the comptroller of currency, all of which facts were recited in the resolution

passed by the stockholders of the defendant bank as one of the considerations for putting that bank into liquidation. It was further shown that plaintiff Burroughs was a director in the proposed Southern National Bank of Merkel, and that, in joining with the other plaintiffs in advancing the money to the liquidating agent to pay off the Dallas Bank, he did so for the purpose of consummating that arrangement, and that the money so advanced was borrowed upon a note signed by all the plaintiffs.

In the case of Faires v. Cockerell, 88 Tex. 428, 31 S. W. 190, 28 L. R. A. 528, our Supreme Court said:

"Perhaps the courts of no state have gone further in applying the doctrine of subrogation than has the court of this state, of which we cite a few instances: One who discharges the vendor's lien upon lands, even the homestead, either by paying as surety, or at the request of the debtor, or at a judicial sale, which, for irregularities in the process, fails to convey the title, is entitled to be subrogated to the lien of the creditor to the extent of the payment so made. McDonough v. Cross, 40 Tex. 285; Burns v. Ledbetter, 54 Tex. 385; Land & Loan Co. v. Blalock, 76 Tex. 85 [13 S. W. 12]. The sureties on a sheriff's official bond, who pay a judgment on account of the failure of the sheriff to return the writ or make collection of the debt, are entitled to be subrogated to the lien of the judgment creditor. Sayles & Bassetts v. Taylor, 36 Tex. 313. A surety on an appeal bond, who pays the judgment after affirmance, is entitled to be subrogated to the rights of the plaintiff in the judgment. Black v. Epperson, 40 Tex. 180. A purchaser at a sale by a guardian, who pays the purchase money, which is appropriated to the payment of debts against the minor's estate, is entitled to be reimbursed for such payment before the minor can recover the property, although the sale did not pass the title. Harrison v. Ilgner, 74 Tex. 86 [11 S. W. 1054]."

[4] Those plaintiffs who were stockholders in the defendant bank unquestionably were sureties to the extent of the amount of capital stock held by them for the payment of the debt due the Dallas Bank, and as such sureties undoubtedly were entitled by subrogation to all the rights of the Dallas Bank after the discharge of the indebtedness to that bank. 37 Cyc. 370, 402–406, 410–417, 428.

[5] While plaintiff Burroughs was not such a stockholder, and therefore was not a surety for the defendant's debt to the Dallas Bank, yet he participated in the advancement so made at the request of Barker, the liquidating agent of the defendant bank, and for the purpose of consummating the agreement of the Southern National Bank of Merkel to take over the assets of the defendant bank and assume certain of its obligations; the consummation of such agreement being for the benefit of the defendant bank as well as for the benefit of the new bank and Burroughs individually. Under such circumstances, there was an implied obligation on the part of Barker to reimburse Burroughs for the amount so advanced, and in contributing to such advancement he was not acting as a mere volunteer, but was entitled to the equitable right of subrogation equally with his coplaintiffs. 37 Cyc. 363–373.

If correct in the foregoing conclusion that plaintiffs were entitled to full subrogation to the rights of the Dallas Bank in the note held by it before the defendant bank went into liquidation, then the value of the collateral attached to that note and surrendered to the liquidating agent and the disposition of the same by the liquidating agent were immaterial issues, and no error was committed in refusing testimony offered by appellants to determine the same.

For the reasons noted, the judgment is affirmed.

### On Motion for Rehearing.

Appellants insist that interveners filed an answer for and in behalf of the defendant bank. The pleas of intervention contained a request for "permission of the court to intervene herein in behalf of themselves and, if it be proper, in behalf of all other stockholders of the hereinafter mentioned First National Bank of Merkel, Tex." The pleas also contained exceptions to plaintiffs' petition, challenging their right to recover against the bank, also special answers, denying all the material allegations contained in the plaintiffs' petition, and the judgment rendered recites that "the defendant, the First National Bank of Merkel, appearing by interveners in this cause."

Appellants insist further that the evidence in the case did not support our finding that the purpose of plaintiff Burroughs in joining the other plaintiffs in advancing the money necessary to pay off and discharge the $10,000 note owing to the Commonwealth National Bank of Dallas was to promote the consummation of the sale to the Southern National Bank of Merkel of the assets of the First National Bank of Merkel. While the evidence tends to support that conclusion, yet, upon a further examination of the record, we cannot say that the conclusion was established beyond controversy. However, it was proven beyond controversy that the money so advanced by the plaintiffs to the president and liquidating agent of the defendant bank was borrowed by plaintiffs from the Stock Yards National Bank of Ft. Worth, and appellants cite testimony from the statement of facts to show that Burroughs signed that note merely as an accommodation for the other plaintiffs. There is no evidence in the record to show who paid off and discharged that note to the Stock Yards National Bank, and, in the absence of testimony to the contrary, it could reasonably be presumed that the principals, and not the accommodation surety, discharged it. If they discharged it, then the entire cause of action for subrogation would be in the coplaintiffs of Burroughs, and, if Burroughs was permitted to share with them in the recovery, it would be an error of which appellants could not complain. Further-

more, if Burroughs did assist in discharging the note to the Stock Yards National Bank, we are of the opinion that such advancement by him, at the special instance and request of Barker, who was the liquidating agent and president of the bank, and clearly for the benefit of the bank and all its stockholders, was sufficient of itself to give him the right of subrogation equally with his coplaintiffs. 6 Pom. Eq. Juris. § 921 (2 Pom. Equitable Remedies).

The motion is overruled.