# SCHRADER *v.* MANUFACTURERS' NATIONAL BANK OF CHICAGO.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 1370. Submitted January 9, 1890. — Decided January 20, 1890.

A national bank went into voluntary liquidation in September, 1873. Before that it had become liable to a state bank, as guarantor on sundry notes, made by a third person, and which were discounted for it by the state bank. In August, 1874, transactions took place between the maker of the notes and the state bank, and the person who acted as the president of the national bank, whereby the maker was released from further liability on the notes, but such acting president attempted to continue, by agreement, the liability of the national bank as guarantor. In a suit begun in October, 1876, a judgment on the guaranty was obtained in May, 1880, by the state bank against the national bank. In a suit brought by a creditor against the national bank and its stockholders to enforce their statutory liability for its debts, the court on an application made in June, 1887, enquired into the liability of the stockholders to have the claim of the state bank enforced as against them, in view of the transactions of August, 1874, and disallowed that claim; *Held,*

(1) It was proper to reëxamine the claim;

(2) The judgment against the bank was not binding on the stockholders, in the sense that it could not be reëxamined;

(3) The guaranty of the bank was released as to the stockholders by the release of the maker of the notes;

(4) The rights of the stockholders could not be affected by the acts of the president done after the bank had gone into liquidation.

IN EQUITY. The case is stated in the opinion.

*Mr. Franklin A. McConaughy* for appellant.

*Mr. Henry G. Miller* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a case growing out of that of *Richmond* v. *Irons*, 121 U. S. 27, and involves a claim against the assets of the Manufacturers' National Bank of Chicago. In the suit of Irons against that bank, by an order of the Circuit Court of the United States for the Northern District of Illinois, one Harvey was appointed receiver of the bank. That court, on July 23, 1883, referred it to a master, to report the amount of the debts of the bank, the value of its assets, and the amount of assessment necessary to be made on each share of its capital stock in order to pay its debts. Among the claims presented before the master was that of the assignee of the People's Bank of Belleville, Illinois, who claimed to be a creditor in the sum of $84,103.48; and the master reported in favor of the claim. It was based on a judgment for $67,277 obtained in the same Circuit Court, May 31, 1880, by the People's Bank against the Manufacturers' Bank. The judgment was founded on eight promissory notes for $5000 each, dated August 5, 1873, made by Henry E. Picket, payable one year after date, to the order of Picket, at the Manufacturers' Bank, with interest at ten per cent per annum, payable semi-annually, and with ten per cent per annum interest after maturity, endorsed by Picket, the payment of each note, principal and interest at maturity being guaranteed by the Manufacturers' Bank. The notes were secured by a trust deed on real estate, made by Picket to one Joseph A. Holmes.

On the 1st of June, 1886, the Circuit Court made a decree directing various shareholders to pay to the receiver, for the benefit of the creditors of the bank, certain sums of money. An appeal was taken to this court by several of the stockholders and was heard, and is the case reported as *Richmond* v. *Irons*, 121 U. S. 27. The decision was announced March 28,

1887, the decree of the Circuit Court was reversed, and the cause was remanded with directions to proceed in conformity with the opinion of this court. After that decision, and before the mandate was presented to the Circuit Court, and on the 20th of June, 1887, on the application of several of the stockholders, the case was referred back to the master, to report again upon the amount of the debts due by the bank, and upon the amount of the assessment necessary to be made on each share of its capital stock, to pay its debts, and upon the amount payable by each shareholder on such assessment, and also to take further proofs in regard to the validity of the claim of the People's Bank, as against the stockholders of the Manufacturers' Bank, and as to whether that claim had been in whole or in part released, discharged, or defeated, by reason of any new matters stated in such application.

On the 16th of June, 1888, the master reported that the claim of the People's Bank ought to be disallowed upon the new proofs taken. Those proofs accompanied his report. The assignee of the People's Bank excepted to the report, and the matter was heard before Judge Blodgett. His opinion is reported in 36 Fed. Rep. 843. He confirmed the report and overruled the exceptions, and, on the 27th of March, 1889, a decree was entered upon the mandate of this court, vacating the decree of June 1, 1886, giving a list of the valid, outstanding claims against the bank, (which did not include the claim of the assignee of the People's Bank,) adjudging what sums were to be paid by the various stockholders, and taxing costs to the amount of $158.60 against the People's Bank and its assignee. The assignee appealed to this court from the decree, because it disallowed his claim, and because of the award of costs against the People's Bank and its assignee.

The Manufacturers' Bank became insolvent and suspended payment on September 23, 1873, and, in pursuance of the national banking act, went into voluntary liquidation on September 26, 1873.

In regard to the claim of the assignee of the People's Bank, the master reported as follows: "I find and report that the claim of the assignee of the People's Bank of Belleville is

based upon the guaranty of the Manufacturers' National Bank of promissory notes made by Henry E. Picket, and secured by real estate, amounting in the outset to $50,000; that this guaranty was made by Ira Holmes, who was an officer of said Manufacturers' National Bank, and before the failure of the bank; that these notes were secured by a trust deed to Joseph A. Holmes upon the undivided half of the northwest quarter of section ten, township thirty-seven north, range fourteen east, being (80) eighty acres, one undivided half of which eighty acres was owned by said Picket (and a five-acre tract and twenty-six lots) and the other undivided half of said eighty acres by said Ira Holmes individually; that after the maturity of these notes and in the month of August, A.D. 1874, Ira Holmes made a written contract with the People's Bank, by which he was to give and did give the bank his promissory notes aggregating the sum of $87,465, to secure the Picket notes, (and other indebtedness for which the bank was not liable,) payable in one, two, three and four years, securing the payment thereof by a trust deed upon said property and the southwest quarter of said northwest quarter, containing forty acres additional, and that subsequently foreclosure proceedings were had upon the trust deed made by Picket, resulting in the placing of the title to the entire tract in the name of said Ira Holmes, and the amount for which the property was sold, to wit, the sum of ten thousand dollars, was credited upon the notes of said Picket, leaving due at that time upon the Picket notes the sum of forty thousand dollars, for the payment of which, and the notes of said Ira Holmes, the entire tract remained charged, said Picket having, for the purpose of enabling the parties to carry out the arrangement referred to, executed a quit-claim deed of his interest in said property to said Ira Holmes. I find, as a matter of fact, that the consideration for the conveyance of said Picket was his release from the payment of his notes, which were thereafter held under the terms of the contract between Ira Holmes and the People's Bank, for the purpose of preserving the guaranty of the bank; that said arrangement changed the original contract of guaranty made by the Manufacturers' National Bank, by the taking of the

new security and the extension of time resulting therefrom upon the original indebtedness. I find further, that the deed executed by said Picket, as the result of the agreement referred to, was made under an arrangement between said Holmes and Picket, and assented to by said People's Bank of Belleville; that said Picket was to be released and discharged from any further liability or payment upon the original indebtedness. By reason of which I find that the Manufacturers' National Bank, the original guarantor, became discharged from all further liability on account of such undertaking of guaranty, and recommend that the claim against it be disallowed."

Judge Blodgett, in his opinion in 36 Fed. Rep. 843, said: "This claim of the People's Bank of Belleville is based upon a guaranty of payment made by the Manufacturers' National Bank of eight notes of $5000 each, given by Henry E. Picket, dated August 5, 1873, and due in one year from date, which were discounted for the Manufacturers' National Bank, soon after their date, by the People's Bank of Belleville. These notes were secured by a trust deed upon land in the vicinity of the city of Chicago. The Manufacturers' National Bank suspended payment and went into voluntary liquidation on or about the 23d of September, 1873, and, when these notes matured, about a year afterwards, dealings were had between the People's Bank of Belleville and Ira Holmes, then acting as president of the Manufacturers' National Bank, in liquidation, and assuming to act also for his bank, by which the title to the real estate held as security for the payment of these notes was transferred to Holmes, and Holmes thereupon gave his notes for the amount due on the Picket notes, and also for a large amount of other indebtedness held by the People's Bank, on which the Manufacturers' National Bank or Holmes or both were liable, and, as is found by the master, Picket, in consideration of a quit-claim deed from himself and wife to Holmes, of the land covered by the trust deed securing his notes, was released from further liability on these notes. The master found that this release of Picket from the notes which the Manufacturers' National Bank had guaranteed operated to release the guarantor, and hence the master rejected the claim.

I do not intend to go into an analysis or statement of the proof upon which the master made his finding, as it will be sufficient to say that I have examined these proofs, and am of opinion that they fully sustain the master's conclusions. It is urged, however, that, as the proof shows that the People's Bank of Belleville brought suit on this guaranty now in question and obtained judgment thereon, such judgment is conclusive against the defendants in this case, who are stockholders in the Manufacturers' National Bank, against whom an assessment is asked. Aside from the authorities cited, which satisfy me that the stockholders of the Manufacturers' National Bank are not concluded by this judgment, which was rendered after the bank went into liquidation, I think the fact shown in this record, that the dealings between the People's Bank of Belleville and Holmes and Picket, by which Picket was released, were unknown to the defendant stockholders at the time this judgment was rendered, should allow these stockholders to go behind the record of that judgment, and raise the question before the court, in this suit, whether the guaranty was released by the release of Picket, the principal debtor, whose notes were guaranteed. The exceptions to the master's report are therefore overruled and the report confirmed."

The contention of the appellant is that, by the transaction in question, Picket was not released. Reliance for this view is had upon an instrument in writing, made on the 27th of August, 1874, between Ira Holmes, as one party, and the People's Bank of Belleville as the other. By that paper Holmes agreed with the bank that he would, on the 1st of September, 1874, execute to it his eighteen promissory notes, of that date, each bearing interest at the rate of 10 per cent per annum from its date, payable semi-annually ; the total amount of the eighteen notes to be $87,465.10, and Holmes simultaneously to execute to one Thomas, as trustee, eighteen deeds of trust to secure the eighteen notes, each deed to secure one note, the bank agreeing to foreclose at once the Picket deed of trust, and to procure the trustee therein to sell the land covered thereby, under its provisions, at the expense of Ira Holmes, and to cause said land to be bought in at such

sale and conveyed to Ira Holmes. The instrument contained a provision " that the notes mentioned in the encumbrances now existing upon said land shall stand as additional security for said People's Bank, as far as they go, for the indebtedness to be created by the said Holmes as hereinbefore mentioned." Under this agreement, the proceedings took place which are set forth in the report of the master.

On the 2d of September, 1874, a paper was executed by the Manufacturers' National Bank, by Ira Holmes as its president, and accepted in writing by the People's Bank of Belleville, by C. W. Thomas as its attorney, which recited the fact of the making of the ten promissory notes by Picket on the 5th of August, 1873, and the securing of the same by a trust deed, and then proceeded as follows : " And whereas the said Manufacturers' National Bank afterwards, and before said notes matured, delivered them to the People's Bank of Belleville, and, for a valuable consideration, guaranteed the prompt payment of said notes and interest to said People's Bank ; and whereas the said Picket, before said notes fell due, became insolvent, and the land mentioned in said trust deed was subject to heavy prior encumbrances, which said People's Bank has removed, it is agreed between the said People's Bank of Belleville and the said Manufacturers' National Bank that the guaranty of the said Manufacturers' National Bank upon eight of said notes shall be and remain binding upon said National Bank, and that any agreement which has been or may be made between the People's Bank and said Picket, in regard to said Picket's liability as maker or endorser of said notes, shall never be construed to release or in anywise affect said guaranty upon eight of said notes." 

On the same 2d of September, 1874, the Manufacturers' National Bank, by Ira Holmes as its president, executed an instrument whereby it agreed that no release of the Picket deed of trust "shall operate to release said bank from its guaranty of eight of the notes in said deed named, to be selected and retained by the People's Bank of Belleville, the present legal holder of all of said notes in said deed named ; and the said Manufacturers' National Bank further agrees

that no release of the maker or endorser of said notes shall operate to relieve said National Bank of its liability upon said guaranty of eight of the same, the said Manufacturers' National Bank hereby continuing its guaranty of eight of said notes, notwithstanding any agreement which may be or may have been made between the holder of the same and the maker or endorser thereof, and notwithstanding any sale which may be made under said deed of trust."

In its opinion in the case of *Richmond* v. *Irons*, at page 59, this court considered that part of the decree appealed from which directed payment of the claims reported by the master under the denomination of Class D, amounting in the aggregate to $185,119.34, and which were designated by the master as claims "arising before the failure of the bank, upon which worthless collaterals were subsequently received." These were claims which, after the bank went into liquidation, were settled between the parties by the acceptance out of the assets of the bank, by the creditors, of bills receivable, in payment of their claims, and which bills receivable contained guaranties of payment then made in the name of the bank. Upon that point this court said: "It is averred by the appellees that they are claims arising for the most part, if not in all instances, upon endorsements and guaranties made in the name of the bank by Holmes, its president, after the suspension of the bank, and while it was in liquidation. It appears clearly from the evidence that, in many cases, parties having claims against the bank accepted from Holmes commercial paper held by the bank, which it had received in the course of its business, and which constituted a part of its assets, running some of it several months and some of it several years, bearing interest, some at the rate of eight and some at the rate of ten per cent per annum, endorsed and guaranteed in the name of the bank by Holmes as president. The books of the bank show that in these cases the paper so received was charged against the account of the party receiving it, thus closing the account as settled. In these cases, it is testified by Holmes that the creditors gave their checks to the bank for the amount standing to their credit. In some cases, the creditors or their agents

testifying to the transactions, without contradicting Holmes in respect to what was in fact done, nevertheless state that the paper accepted by them was received, not in payment, but as security. It is obvious, however, that in most, if not all instances, the witnesses are referring to the security which they supposed they had received and were entitled to rely upon, by means of the endorsement and guaranty of the paper thus received, made by Holmes as president in the name of the bank. They certainly acted upon this belief, for in many instances they proceeded to obtain judgments against the bank, after the maturity and dishonor of the paper so received upon these endorsements and guaranties, and in this proceeding proved their claims in that form by transcripts of such judgments. It is true that, in the final decrees, the master was directed to correct his computation of interest so as to equalize the claims of the creditors by allowing interest at a uniform rate from the time of the suspension upon the amounts as they appeared to be due from the books of the bank, but all the claims in Class D, notwithstanding the settlements made, were included in the amounts found due and ordered to be paid. In this respect we are of the opinion that the decree is erroneous. Those creditors who made settlements after the bank was put into liquidation and received from the president in that settlement paper of the bank, or, as in some cases, the individual notes of Holmes himself, endorsed or guaranteed in the name of the bank, are not to be considered as creditors of the bank entitled to subject the stockholders to individual liability. The individual liability of the stockholders as imposed by and expressed in the statute, is indeed for all the contracts, debts and engagements of such association, but that must be restricted in its meaning to such contracts, debts and engagements as have been duly contracted in the ordinary course of its business. That business ceased when the bank went into liquidation; after that there was no authority or the part of the officers of the bank to transact any business in the name of the bank so as to bind its shareholders, except that which is implied in the duty of liquidation, unless such authority had been expressly conferred by the shareholders.

No such express authority appears in this case, and the power of the president or other officer of the bank to bind it by transactions after it was put into liquidation is that which results by implication from the duty to wind up and close its affairs. That duty consists in the collection and reduction to money of the assets of the bank, and the payment of creditors equally and ratably so far as the assets prove sufficient. Payments, of course, may be made in the bills receivable and other assets of the bank *in specie*, and the title to such paper may be transferred by the president or cashier by an endorsement suitable to the purpose in the name of the bank, but such endorsement and use of the name of the bank is in liquidation and merely for the purpose of transferring title. It can have no other effect as against the shareholders by creating a new obligation. It does not constitute a liability, contract, or engagement of the bank for which they can be held to be individually responsible. Every creditor of the bank, receiving its assets under such circumstances, knows the fact of liquidation, and is chargeable with knowledge of its consequences; he takes the assets received at his own peril; he is dealing with officers of the bank only for the purpose of winding up its affairs. If he accepts something in lieu of an existing obligation looking to future payment it must be from other parties. It is not within the power of the officers of the bank, without express authority, by such means to prolong indefinitely an obligation on the part of the shareholders, which is imposed by the statute only as a means of securing the payment of debts by an insolvent bank when it is no longer able to continue business, and for the purpose of effectually winding up its affairs. This is the very meaning of the word 'liquidation.'"

It was proper for the Circuit Court, after the decision of this court, to permit the claim of the People's Bank to be reexamined, to ascertain whether it was a valid claim against the stockholders of the Manufacturers' Bank. It is true that on the 31st of May, 1880, the People's Bank recovered in the Circuit Court a judgment against the Manufacturers' Bank for $67,277, in an action brought against the latter as guarantor

of   e eight notes; but, as the suit in which that judgment was recovered was not commenced v til the 20th of October, 1876, more than three years after the Manufacturers' Bank went into liquidation, the judgment against the corporation was not binding on the stockholders in the sense that it could not be reëxamined; and the transactions of August and September, 1874, also took place about a year after the bank went into voluntary liquidation. *Moss* v. *McCullough*, 5 Hill, 131; *Miller* v. *White*, 50 N. Y. 137; *McMahon* v. *Macy*, 51 N. Y. 155; *Trippe* v. *Huncheon*, 82 Indiana, 307.

When this judgment was rendered, on the 31st of May, 1880, the transactions of August and September, 1874, between the People's Bank and Holmes and Picket, were not known to the stockholders of the Manufacturers' Bank; and it is quite clear that they are entitled to go behind the record of that judgment and raise the question whether the guaranty of the Manufacturers' Bank was released, as to them, by the release of Picket, the principal debtor, whose notes were guaranteed by that bank.

We are satisfied, on the evidence, that the consideration for the deed from Picket to Ira Holmes was, that Picket should be released as maker of the notes held by the People's Bank, which the Manufacturers' National Bank had guaranteed. As to what is contained in the two papers dated September 2, 1874, the meaning of them is that the liability of the Manufacturers' National Bank, as guarantor upon the eight notes of Picket, should continue notwithstanding the release of the land from the Picket deed of trust by a sale under the power contained in that deed, in pursuance of the agreement made with Ira Holmes, and notwithstanding the release of Picket, as maker of the notes, from further liability upon them. The sale under the Picket trust deed was made simply to release the security, by placing the title in Holmes, and was not made for the purpose of paying the notes; and the agreement of Holmes, made after the bank went into liquidation, to continue its guaranty upon the notes, a liability under which the People's Bank is now attempting to enforce against the stockholders, is not binding upon them, in view of what was said

by this court in the case of *Richmond* v. *Irons*, before quoted.

The decree of the Circuit Court is

*Affirmed.*

MR. CHIEF JUSTICE FULLER, having been of counsel in *Richmond* v. *Irons*, took no part in the consideration or decision of this case.