RODGERS et al. v. CENTRAL BANK & TRUST CO.   (No. 7047.)*

(Court of Civil Appeals of Texas. Galveston. Feb. 18, 1916.. Rehearing Denied March 16, 1916.)

1. BANKS AND BANKING ☞64—AUTHORITY OF OFFICERS—LIQUIDATION.

The former president of the defendant bank became considerably indebted to the institution, whereupon land which he owned was conveyed to the bank. Thereafter 7 of the 15 directors, including the succeeding president, authorized him to convey such land to another, who paid into the bank $5,000 to be credited upon the former president's obligations. After this was done, the bank went into liquidation, and lender, making the payment, demanded reimbursement, whereupon, the property being reconveyed, the succeeding president of the bank, who was its liquidating officer, executed its note which was indorsed by defendants, and out of the proceeds the indebtedness was paid. Rev. St. 1911, art. 378, declares that the board of directors of every bank shall meet at least once a month and pass on the business of the bank, and that no bills payable shall be made and no bills shall be rediscounted by the bank without consent of the board of directors. *Held* that, in view of the fact that the original transaction was authorized only by 7 of the 15 directors, the bank did not become obligated to satisfy the note, and hence the second president as liquidating officer could not thereafter bind the bank by note executed to obtain funds to discharge the first, particularly as the subsequent note was not authorized by the directors; consequently, the indorsers having paid the note are not entitled to reimbursement.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 125; Dec. Dig. ☞64.]

2. BANKS AND BANKING ☞64 — AUTHORITY OF OFFICERS—LIQUIDATION.

Where the assets of a bank are being liquidated, the liquidating officer, though its president, is not entitled to execute notes of the bank to take up former indebtedness.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 125; Dec. Dig. ☞64.]

Appeal from District Court, Harris County; E. R. Campbell, Special Judge.

Action by Richard Rodgers and others against the Central Bank & Trust Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

John G. Tod and Kittrell & Kittrell, all of Houston, for appellants. C. R. Wharton and Jno. C. Townes, Jr., both of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellants, Richard Rodgers, John G. Tod, and M. E. Foster, against the appellee, to recover the sum of $5,000 and interest which plaintiffs alleged they had been compelled to pay as accommodation indorsers upon a note executed by appellee. Plaintiff's petition, among other allegations in regard to the note for the payment of which they ask reimbursement from the defendant, contains, in substance, the following: That at the time of making the note and before the negotiation thereof by defendant, as hereinafter set forth, the plaintiffs, at the special instance and request of the defendant and solely for its accommodation, indorsed said note, and thereby became liable, undertook and promised to pay said note when it became due in the event defendant failed to pay same. It is averred that subsequently the plaintiffs as indorsers upon said note were compelled to pay the same, and that all of the money which was paid by them as indorsers was paid for the use and benefit of the defendant, which amount the defendant bank became liable to pay plaintiffs. The answer of defendant avers that the note indorsed by plaintiffs and for the payment of which they seek reimbursement was executed without lawful authority by one F. W. Vaughan, formerly president of the defendant bank; that he was not authorized by the directors of the bank to execute the note; that the bank received no benefit from the note; that at the time of the execution of the note it was not a going concern, but

had gone into voluntary liquidation; that Vaughan was pretending to act as liquidating agent at the time of this transaction, but he had no authority as president of the bank to execute and deliver the note sued on; that the transaction was at its inception void, and the plaintiffs, by becoming indorsers thereon, did so voluntarily; that they were not requested to do so by the directors of the Central Bank & Trust Company; that at the time of these transactions the defendant was a bank organized under the laws of the state of Texas, with authority to conduct the business of receiving money on deposit, paying interest thereon, buying and selling exchange, gold and silver coin, loaning money, and doing such other things as are authorized by the banking laws of this state; that these laws do not confer authority upon said bank to execute notes of the character sued on and procure indorsers thereon and to become liable in such transactions; that these things were all ultra vires. The answer also contains a recital of all the negotiations and facts leading up to and in explanation of the execution of said note. The cause was tried in the court below without a jury, and the judgment rendered was that plaintiffs take nothing by their suit.

The trial judge, at request of plaintiffs, filed his conclusions of fact and law. We adopt as our fact conclusions the findings of fact filed by the trial judge, which are as follows:

"On March 16, 1910, F. E. Pye, who had been president of the Central Bank & Trust Company, a state bank, created and existing under the laws of the state of Texas regulating state banks, was indebted to said bank in very large sums of money, aggregating more than $30,000, which said indebtedness was represented by unsecured notes and overdrafts. He approached John G. Tod, H. L. Mitchell, M. E. Foster, and F. W. Vaughan and asked them to indorse his two notes of $5,000 each, which he would place with certain banks outside of the city of Houston and procure $10,000 to be paid and applied on his indebtedness to the Central Bank & Trust Company, and agreed that if they would indorse said notes for him he would transfer to them, or some one for them as trustee, certain valuable property which he had in the city of Houston, which was commonly known as the Lombardi property, and hereinafter described. They agreed to do this. The notes were indorsed and discounted, and Pye, on March 16, 1910, conveyed the property to John G. Tod, by general warranty deed, absolute upon its face, reciting a consideration of one dollar. The deed was recorded in the deed records of Harris county on the same date, and its purpose was to secure the liability of the above-named indorsers upon the two notes referred to, and thereafterwards, to secure the Central Bank & Trust Company on account of the balance of Pye's indebtedness to it, and Tod held the property under this deed for such purposes.

"On April 19, 1910, a state bank examiner demanded that the title to said property described in said deed should be conveyed to the Central Bank & Trust Company, and Tod thereupon, for a nominal consideration, conveyed the property to it, the deed being one of general warranty, conveying absolute title, and the same was filed and recorded, but it was understood that the same was held to secure the indebtedness of Pye, as above stated.

"On May 6, 1910, the following paper was executed: 'Mr. F. W. Vaughan, President, Central Bank & Trust Company, City—Dear Sir: You are authorized to convey lots 3, 4 and 5 and half of 11 and 12 in block 96, in the city of Houston, S. S. Buffalo bayou, to Southern Loan & Investment Company upon it paying into the bank $5,000 to be applied to the credit of F. E. Pye's obligations, the Southern Loan & Investment Company executing an agreement binding said company to reconvey said property upon request of the bank upon it being repaid such sum of five thousand dollars. Yours truly, John G. Tod. Richard Rodgers. C. L. Bering. F. W. Vaughan. N. A. Sayre. August De Zavala. H. L. Mitchell. May 6, 1910.'

"The persons who signed the foregoing paper were 7 of the 15 of the board of directors of the Central Bank & Trust Company, and the property described therein is the property referred to in the deed described in the foregoing paragraphs. There was no meeting of the board of directors authorizing this action, and nothing appears upon the minutes of the directors in reference thereto, and said paper seems to have been informally signed.

"On May 6, 1910, a state bank examiner was insisting that the amount of Pye's unsecured indebtedness and overdraft to the Central Bank & Trust Company should be reduced or secured, and threatened to close up the institution if the same was not done, and upon said date the Central Bank & Trust Company, by F. W. Vaughan, president, conveyed the property hereinbefore described to the Southern Loan & Investment Company, a corporation, of which Jesse H. Jones was president; the consideration recited being one dollar, the deed being one of general warranty and subject to all liens against the property at the time of the delivery of the same. At the time of the execution and delivery of said deed, the Southern Loan & Investment Company delivered to the Central Bank & Trust Company its note for $5,000, which said note the Central Bank & Trust Company discounted to some other institution, receiving the sum of $5,000 in cash, which was placed to the credit of F. E. Pye, and was used in paying and reducing his indebtedness to the Central Bank & Trust Company. Thereafter, on May 18, 1910, before the maturity of said note, it was paid by the Southern Loan & Investment Company; and thereafter said Southern Loan & Investment Company held whatever title had been conveyed to it by the deed above mentioned, as security for the repayment to it by said Central Bank & Trust Company of said sum of $5,000.

"In the latter part of May, 1910, the Central Bank & Trust Company went into liquidation, and F. W. Vaughan, its president, remained in charge of its affairs as liquidating agent; but said bank liquidated through the Lumbermen's National Bank of Houston, Tex., and transferred to said last-named bank all of its valuable assets.

"On July 2, 1910, the Southern Loan & Investment Company was demanding that it be repaid the $5,000 that it had paid out in the manner above stated, but offered to reconvey the land that had been transferred to it on May 6, 1910; and on July 2, 1910, the Central Bank & Trust Company, acting or purporting to act, through F. W. Vaughan, its president, executed its note for the sum of $5,000, payable to its own order, due October 1, 1910, bearing 10 per cent. interest from date, and procured Richard Rodgers, John G. Tod, and M. E. Foster, plaintiffs in this suit, who were also directors and stockholders of said corporation, to become indorsers on the same. This note was discounted by the Lumbermen's

National Bank for the sum of $5,000, and same was paid to the Southern Loan & Investment Company to cover the advance or payment that it had theretofore made in the manner as above stated, and to obtain a reconveyance of the property which had theretofore been conveyed to it by the Central Bank & Trust Company. Said note was not paid by the Central Bank & Trust Company at its maturity, and these indorsers were compelled to pay the same, and they have filed this suit against the Central Bank & Trust Company to be reimbursed for the amount that they have so paid as indorsers.

"By deed dated January 21, 1911, the Southern Loan & Investment Company, for a recited consideration of one dollar, reconveyed the property above described to the Central Bank & Trust Company, but said deed was not placed of record; and thereafter, by deed dated August 25, 1911, which was placed of record, the Southern Loan & Investment Company, for a recited consideration of one dollar, conveyed said premises to M. E. Foster and H. L. Mitchell, said deed being in the nature of a quitclaim deed.

"At the time of the conveyance of said property by Pye to Tod, there was a vendor's lien upon said property in favor of C. Schwartz; and on September 6, 1910, there was a judgment of foreclosure in the district court of Harris county in favor of Conrad Schwartz against Pye and others, for the principal sum of $40,506. The judgment recites that at a sale of the property the proceeds of the sale should be applied: First, to the payment and satisfaction of all costs; second, to the payment and satisfaction of Schwartz's judgment; third, to the payment and satisfaction of the indebtedness of Pye to interveners, M. E. Foster, F. W. Vaughan, H. L. Mitchell, and John G. Tod, in the sum of $10,000, with interest at 8 per cent; fourth, to the payment and satisfaction of the indebtedness due by Pye to the Central Bank & Trust Company; and, fifth, any balance remaining to be paid to defendant Pye, his heirs or assigns.

"There was a sale under the decree described in the foregoing paragraph on June 6, 1911, and the sheriff, acting under an order of sale issued under that judgment, conveyed the property to Norman G. Kittrell, Jr. On the same day Norman G. Kittrell, Jr., conveyed said property to M. E. Foster and H. L. Mitchell for a recited consideration of $45,500, paid as follows: $5,500 cash, and the balance of $40,000 evidenced by the note of the vendees, of even date with said deed, payable to the order of the said Norman G. Kittrell, Jr., five years after date, with interest at the rate of 7 per cent. per annum, to secure which the vendor's lien was retained in said deed.

"By deed dated August 28, 1911, M. E. Foster and H. L. Mitchell conveyed said property to William A. Wilson, for a recited consideration of $58,000, in the following manner: $40,000 by the assumption of the note of Foster and Mitchell above referred to, which is recited to have been transferred and assigned to Conrad Schwartz, and $18,000 represented by the three promissory notes of said Wilson, two for $5,000 each, and one for $8,000, payable June 1, 1912, bearing interest at 7 per cent., to secure all of which the vendor's lien was retained in said deed.

"The evidence does not show that there was any equity in said property over and above the amounts named in the judgment of September 6, 1910, which were superior or prior to the judgment therein rendered for the defendant herein; but we find that the said Vaughan and the plaintiffs herein believed, at the time of the execution and delivery of the note herein sued upon, that there was an equity in said property which would be beneficial to the Central Bank & Trust Company.

"I find that there was no meeting of the board of directors of said Central Bank & Trust Company, nor do the minutes show any such meeting, at which any of these transactions were ever discussed or authorized. I find that the board of directors, as such, never discussed, authorized, or ratified the act of F. W. Vaughan, as president, in executing the note of July 2, 1910, upon which this suit is predicated, or in procuring the indorsements of the plaintiffs thereon.

"After May 6, 1910, the Central Bank & Trust Company ceased to do business in the usual course of business, and thereafter its doors were closed; but there were, after that time, frequent meetings of the directors of said bank in reference to its business."

[1] Appellants have grouped their several assignments of error and submit thereunder but one proposition, which is as follows:

"When a bank, while a going concern, makes a note in the ordinary course of business as a means of raising money, which note is secured by what is believed by the president and directors to be a valuable equity in real estate, and before the maturity of the note the bank goes into liquidation and turns over to another bank its readily convertible assets to pay its depositors, but the president is appointed 'liquidating agent,' and the directors continue to hold meetings, and the holder of the note given to borrow money demands payment, and the bank is unable to pay it, but the money can be raised if the president and 'liquidating agent' will give the note of the bank indorsed by three parties, and the note is given indorsed by three parties (the appellants), which note is received by the creditor of the bank, and converted into cash, and the first note is paid and the real estate released and reconveyed to the bank, the indorsers who are compelled to pay the note last given are entitled to recover the amount from the bank, being subrogated to all the rights of the holder of the first note, and the bank is estopped to deny its liability."

We do not think this proposition can be sustained. It assumes that the transaction between Jones and the appellee bank was one which arose in the usual course of business of the bank, and by such transaction the bank became bound to pay Jones upon demand the sum of $5,000. It seems to us that it was an extraordinary and unusual proceeding for a bank to borrow money for the purpose of discharging an obligation to itself of one of its debtors. If by the conveyance of the property to Jones in consideration of the $5,000 note executed by him the president of the bank only intended to bind the property received by the bank from Pye as security for his indebtedness, such an agreement might have been permissible and the amount received from Jones credited on Pye's indebtedness. This was all that the instrument before set out signed by 7 of the 15 directors of the bank authorized, and we do not think the bank was bound by any understanding that it would become liable to Jones for the $5,000. The statute under which appellee bank was organized and operated contains the following provision:

"The board of directors of each and every bank organized under this act shall meet at least once per month and pass upon the business of the bank back to the previous meeting of the board, and shall keep a written record of its approval or disapproval of each and every loan, * * * and no bills payable shall

be made and no bills shall be rediscounted by the bank except with the consent of the board of directors." Section 6, c. 10, Acts 1st Called Session 29th Leg.; article 378, Rev. Stat. 1911.

It seems clear to us that the instrument before set out, executed by less than a majority of the board of directors, cannot be regarded as a written record of the consent of the board of directors that the president could borrow from Jones the $5,000 and bind the bank to repay the loan.

[2] In this view of the matter, Jones had no enforceable claim against the bank. If it be conceded, however, that Jones had an enforceable claim against the bank for the $5,000, the president, after the bank had gone into liquidation, had no authority to execute the note of the bank for said amount, notwithstanding the fact that he was acting as "liquidating agent" for the bank. White v. Tudor, 24 Tex. 639, 76 Am. Dec. 126; Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864; Schrader v. Manufacturers' Bank, 133 U. S. 67, 10 Sup. Ct. 238, 33 L. Ed. 564. We think the note of July 2, 1910, for the payment of which appellants seek reimbursement from the bank, was not an obligation of the bank, and therefore it cannot be held liable to reimburse appellants for the payment of said note. We also agree with the trial judge that there is no question of estoppel or subrogation in the case.

It follows that the judgment of the trial court should be affirmed, and it has been so ordered.

Affirmed.