F. D. PEET, Receiver, Appellant, v. DES MOINES SAVINGS BANK et al., Appellees.

**BANKS AND BANKING:** Insolvency and Dissolution—Unauthorized
1   Assessment. Stockholders of an insolvent state bank are not liable to an assessment on their stock to pay *loans* contracted by the presi-

dent and cashier during the period of liquidation, and *after* the bank had become insolvent and had closed its doors, and, in part, after its charter had expired, when the only authority to contract such obligations rested in resolutions (1) by the stockholders, which authorized the directors to *sell* the assets, *pay* the debts, and *dissolve* the corporation, and (2) by the directors, which authorized the president and cashier to carry out the directions of the stockholders.

**BANKS AND BANKING:** Insolvency and Dissolution—Burden of Proof in re Assessment. He who asks that stockholders of a state bank be assessed on their stock to pay bank obligations must assume the burden to show that such obligations were contracted for the *purpose* and in the *manner* prescribed by statute.

*Appeal from Winnebago District Court.*—JOSEPH J. CLARK, Judge.

FEBRUARY 9, 1921.

ACTION in equity for authority on behalf of the receiver to make a 100 per cent assessment against the stockholders of the Buffalo Center State Bank, proportionate to their holdings of the capital stock thereof, to pay creditor's claims previously approved by the receiver herein. Decree entered dismissing petition, and taxing costs to F. D. Peet, receiver, who appeals.— *Affirmed.*

*Edwards, Longley, Ransier & Harris,* for appellant.

*Nourse & Nourse, Thos. A. Kingland, H. A. Brown,* and *Tom Boynton,* for appellees.

DE GRAFF, J.—The Buffalo Center State Bank was incorporated under the laws of the state of Iowa as a state bank in January, 1894, with a capital stock of $25,000, and was to continue for 20 years. In December, 1899, its capital stock was increased to $50,000, which is owned in varying amounts by the several defendants. It ceased to do a banking business August 1, 1908. Defendant Gilbertson was its president from the date of its organization, and from January, 1905, defendant

*1. BANKS AND BANKING: insolvency and dissolution: unauthorized assessment.*

Kelley was its vice-president. These two gentlemen were also members of the examining committee of the bank. Dividends were declared and paid by the bank semiannually from July, 1894, to December, 1902, but none were paid thereafter. In October, 1907, the Iowa state bank examiner, after an examination of the books of the bank, reported to the auditor of state that its capital stock was impaired, and suggested that a 100 per cent assessment would be required to meet its liabilities. A voluntary assessment of 60 per cent was made by the bank upon its stockholders, including the Des Moines Savings Bank, which paid its proportionate share in the sum of $3,720 on the 21st of February, 1908. On the 15th day of March, 1916, C. H. Kelley filed in the district court of Winnebago County a petition in equity, praying that a receiver be appointed, with power and authority to take charge of the unfinished business of the bank, to collect and disburse all of its assets, pay its debts, and dissolve the corporation. Before the original notice in said action was served, the auditor of state and the attorney general filed in said cause a petition of intervention, asking for the appointment of some disinterested person as receiver, predicating the prayer on the facts that the bank had ceased to do a regular bank business; that there were liabilities against said bank in the aggregate sum of $50,000; and that the assets of said bank were of the actual value of not to exceed $5,000. On the 24th day of March, 1916, with the consent of the parties to said action, F. D. Peet was appointed receiver. On January 13, 1917, the court directed the receiver to give notice to all creditors of the defendant bank to present their duly verified claims within 60 days from the date of said order. Due notice was given, and the following claims were presented to the receiver, to wit: (1) The State National Bank for $6,000 on a promissory note dated September 7, 1913, which claim originally accrued on April 14, 1910. (2) C. H. Kelley for $8,000 on a promissory note dated July 9, 1913, and for $5,112 upon open account. (3) G. S. Gilbertson for $18,115.24 on book account originally accrued as follows: November 19, 1914, $10,000; November 20, 1914, $1,250; June 10, 1915, $6,231.91. (4) G. S. Gilbertson for $12,000 for services rendered to said bank. The books of the bank did not disclose any other creditors. The foregoing claims, with the exception

of the last one mentioned, were allowed by the receiver, but no order of court was entered confirming same.

It is further shown that all of the assets of said bank were converted by the receiver, as far as possible, into cash; that he realized therefrom the sum of $317.56; and that the other assets remaining in his hands were worthless and uncollectible.

On March 9, 1917, the receiver filed his petition in equity in this case, and the trial court was asked to adjudge and decree that the Buffalo Center State Bank is insolvent; that the claimants above named are the creditors of said bank in the amounts stated; that these liabilities accrued while the defendants were stockholders of said bank; that the defendants are severally liable for such debts proportionate to the amount of their several shares of capital stock set out in the petition; that an assessment of 100 per cent be made against each of said defendants, proportionate to his holdings of the capital stock; and that judgment be entered against each of them for the amount of such assessment.

Each of the defendants filed a separate answer. No purpose will be served in setting out *in extenso* the defensive matters pleaded. Defendant Kelley, *inter alia*, pleaded the insolvency of the bank and the statute of limitations. The defendant Des Moines Savings Bank, *inter alia*, pleaded that, on the 1st of August, 1908, the said bank discontinued doing a banking business and went into voluntary liquidation, transferring its building, banking business, deposits, and bills receivable to the Buffalo Center Savings Bank; that, under the laws of the state of Iowa, the defendant Des Moines Savings Bank never had power or authority to contract any indebtedness, except as by statute permitted; and that no liability was created on its collateral holding of 248 shares of stock of the Buffalo Center State Bank; that the Buffalo Center State Bank had no power or authority, and was by the statute of the state expressly forbidden to incur any indebtedness or liability, except for necessary expenses in managing and transacting its business for depositors and to pay deposits, save that, in pursuance to an order of its board of directors, previously adopted, it might incur other liability not in excess of an amount equal to its capital stock; that none of the indebtedness referred to in plaintiff-receiver's petition was in-

curred for the purpose of paying necessary expenses in managing and transacting its business, or for deposits, or for paying depositors, nor was it incurred in pursuance of an order of its board of directors previously adopted; and that the suit by the receiver is barred by the statute of limitations.

The Forest City National Bank pleaded, *inter alia*, that, under the laws of the United States governing it as a national bank, it never had any power or authority to own or hold stock in a state bank or other corporation; that its powers were conferred upon it by Section 5136 of the Revised Statutes of the United States; that the Buffalo Center State Bank had no power or authority to create the indebtedness to which the claims filed with the receiver relate, nor was such indebtedness incurred in pursuance of an order of its board of directors previously adopted, as required by statute; that more than five years has elapsed prior to the commencement of this suit and the insolvency and voluntary liquidation of the defendant bank.

On the material issues thus joined, trial was had, and the court made the following findings, and so decreed: (1) That the defendants are and were the owners and holders of shares of stock in the Buffalo Center State Bank of the par value as follows: Des Moines Savings Bank, $6,200; G. S. Gilbertson, $17,700; P. H. Harrington, $5,800; Cathryn M. Harrington, $200; K. K. Kellerud, $5,500; C. H. Kelley, $12,600; Forest City National Bank, $2,000. (2) That the Forest City National Bank was the real owner of said stock, although the certificates stand on the books of the corporation in equal shares in the name of C. A. Isaacs and B. H. Thomas, respectively. (3) That the creditors' claims filed with and allowed by the receiver against said bank are and are declared to be invalid, and not lawful claims. (4) That the petition of F. D. Peet, receiver, is dismissed at his costs as such receiver.

The primary question presented by this appeal is: Are the stockholders of the Buffalo Center State Bank subject to assessment for the payment of the claims of the State National Bank, G. S. Gilbertson, and C. H. Kelley against said bank?

I. This action is based on Section 1882 of the Code, which provides:

"All stockholders of savings and state banks shall be indi-

vidually liable to the creditors of such corporation of which they are stockholders over and above the amount of stock by them held therein and any amount paid thereon, to an amount equal to their respective shares, for all its liabilities accruing while they remained such stockholders; and should any such association or corporation become insolvent, its stockholders may be severally compelled to pay such deficiency in proportion to the amount of stock owned by each, not to exceed the extent of the additional liability hereby created. The assignee or receiver of any such corporation, or in case there is none, or of his failure or refusal to act, any creditor thereof, may maintain an action in equity to determine the liability of the stockholders, and the amount to which each creditor shall be entitled; and all parties interested shall be brought into court.''

It is affirmed by appellant, and denied by appellees, that the indebtedness of the Buffalo Center State Bank, for the payment of which assessment is sought to be made, is an indebtedness contemplated by the statute, for which the defendant stockholders are liable. Appellant's proposition is predicated on the provisions of Section 1855-a of the Supplement to the Code, 1913, which reads:

''State and savings banks may contract indebtedness or liability for the following purposes only: for necessary expenses in managing and transacting their business, for deposits, and to pay depositors; provided, that in pursuance to an order of the board of directors previously adopted, other liabilities not in excess of amount equal to the capital stock may be incurred.''

In the correct decision of the point in controversy, certain questions finding answers in the record of this case must be taken into consideration. When was this indebtedness created? For what purpose was it created? What authority existed and in whom to create it? These matters are of the essence of the contracts on which the creditor claimants seek to impose liability on the defendant stockholders.

It is conceded that the primary question relates to the authority to create the indebtedness to which the creditors' claims refer. After August 1, 1908, the Buffalo Center State Bank did not occupy a banking house or banking room or per-

form any of the ordinary functions of banking business. Its books and records were taken by Gilbertson to Des Moines, and all subsequent business of the bank was done by cashier Thomas in that city. No deposits were received, no exchange sold, nor was any money loaned after that time. The bank was, in fact, insolvent, and so recognized by its officers and directors. A special meeting of the stockholders was held on the 1st of August, 1908, and the following resolution was adopted:

"Whereas, it being the sense of the meeting that the bank should discontinue doing a banking business, and as soon as possible liquidate its affairs, on motion duly made and carried, the stockholders, by unanimous vote, adopted the following resolution: 'Resolved that the board of directors of this bank be and are hereby authorized and empowered to sell, convey, and transfer to any person, persons, company, or corporation desiring to purchase same, any part or all of the assets of this bank, except the books and papers of the corporation, on such terms and at such price as they may deem advisable, and to perform any other acts in this connection which, in their judgment, are necessary to conserve the best interests of the bank. The proceeds of such sale or sales shall be used to pay the running expenses of the bank, protect its property, and reduce its liabilities. Such sales of assets and paying of obligations shall proceed until all assets of the bank have been sold and all its liabilities have been paid, at which time the directors are authorized to dissolve this corporation as provided by law.' "

Acting under this authority, the bank sold all of its physical assets, including the bank building. A resolution in conformity to the powers granted by the stockholders was adopted August 3, 1908, by the board of directors, in which certain agreements for the sale of real estate and of personal property, including furniture and fixtures owned by the bank, were approved. The resolution then recited:

"And be it further resolved that the president and cashier of this bank be and are hereby authorized and empowered to sell, convey, and transfer to any person, persons, company, or corporation desiring to purchase same, any part or all of the remaining assets of the bank, except the books and papers of the corporation, at such price and on such terms as they deem ad-

visable, and to perform any other acts which, in their judgment, are necessary to conserve the best interests of the bank. The proceeds of such sale or sales shall be used to pay the running expenses of the bank, protect its property, and reduce its liabilities. Such sales of assets and paying of obligations shall continue until all assets of the bank have been sold and all its liabilities have been paid, at which time the said officers are authorized to dissolve this corporation, as provided by law."

No other or different resolutions were ever adopted, nor were further meetings of the directors ever held.

Under these resolutions, did the officers of the said bank have power and authority to contract the indebtedness on the dates alleged and for the purposes claimed? The bank itself was in process of liquidation, and the resolutions are predicated upon this thought, and none other.

Recognizing that the bank was insolvent, and that it could no longer perform the functions of a bank, it is apparent that the thought uppermost in the minds of all was to sell the assets of the bank at such price as was deemed advisable. All "other acts in this connection" relate to the disposition of the assets of the defunct bank. No other construction is reasonable, and surely the stockholders did not intend to give an indefinite authority to the directors, nor did the directors themselves at that time intend that the authority given should be held in abeyance, and that, after many years, money should be borrowed for purposes disclosed by this record. The directors' resolution cannot be construed to create greater authority than was intended by the stockholders' resolution. Contracts, debts, and obligations of a state bank are restricted by legal limitations to such debts and obligations as are contracted in the ordinary course of its banking business, and the individual liability of the stockholders, as defined by statute, must be so construed. It cannot be said that the indebtedness of the Buffalo Center State Bank, for the payment of which it is sought to make the stockholders liable, arises by implication in the process of liquidation; and, unless the authority to create such indebtedness was expressly created by the shareholders or directors, it does not exist. The plain intent of the resolution and the duty imposed thereby were to sell the assets of the bank and to pay the creditors *pro*

*rata.* The contracts by which the indebtedness in question was created are not *ultra vires,* for the reason that the action by the receiver is not against the bank, but it is attempted to impose upon the stockholders a statutory liability. See *State v. Corning State Sav. Bank,* 136 Iowa 79.

If the contracts creating the indebtedness are within the prohibition of the statute, then no liability attaches for which an assessment against the stockholders can be made. It would be inequitable to subject the property of stockholders to risks which they have never undertaken or authorized. Obligations for which they are liable must be such as are ordinarily incident to the banking business. Liquidation and the incidents thereof are not within the purview of the ordinary course of banking business. *Schrader v. Manufacturers' Nat. Bank,* 133 U. S. 67 (33 L. Ed. 564); *Kiggins v. Munday,* 19 Wash. 233 (52 Pac. 855).

In the instant case, the claimant creditors were acquainted with the bank's insolvency and its financial relations; knew that the bank had ceased to perform its ordinary functions; knew that it was in process of liquidation; and two of the creditors were stockholders and officers of said bank. That we may more fully understand the situation, we will analyze the claims of the creditors separately.

II. The State National Bank claims to have loaned $6,000 to the Buffalo Center State Bank on April 14, 1910, which loan was renewed September 3, 1913. Both notes were signed "G. S. Gilbertson, Trustee for Buffalo Center State Bank." Gilbertson was not the trustee for the Buffalo Center State Bank, nor did he have authority to execute commercial paper for the bank, as trustee. Gilbertson at said time was a director and stockholder of the Buffalo Center State Bank, and also its president, by virtue of his election on January 13, 1908. He was also a director and stockholder of the State National Bank, from 1905 to 1911. B. H. Thomas was a director and stockholder of the State National Bank, and its vice-president. He was also a director of the Buffalo Center State Bank, by virtue of his election in January, 1908, and was its cashier by appointment. It is clearly shown that these officers were fully cognizant of the financial status of the defunct bank at the time in question, and this fact

may properly be considered as bearing on the *bona fides* of the transaction.

For what purpose was the $6,000 debt created? The burden of proof is upon plaintiff to show that a debt for which assessments are sought to be imposed on defendants was con-

2. BANKS AND BANKING: insolvency and dissolution: burden of proof *in re* assessment.

tracted for the purpose and in the manner prescribed by statute. It is not clearly or definitely disclosed by the record for what particular purpose the State National Bank loan was created, or for what the fund was used. B. H. Thomas, who acted for both banks, testified:

"I had to do with the transaction at the time this $6,000 was borrowed from the State National Bank of Iowa Falls for the business of the Buffalo Center State Bank. That money was borrowed to wind up the affairs and business of the Buffalo Center State Bank, and was used for that purpose."

He further testifies in relation to the time certificates outstanding August 1, 1908:

"The time certificates were very largely certificates issued for loans that had been made to the Buffalo Center State Bank, —the majority of them were,—a very large portion; but I would not say that they were all that."

Shortly after the time the Buffalo Center State Bank ceased to function as a bank (August 1, 1908), the Buffalo Center Savings Bank assumed the payment of all checking accounts of depositors, and also a considerable portion of all of the time certificates. Cashier Thomas, who handled practically all of the bank's business relative to liquidation, was not able to name or number a time certificate under the care of the Buffalo Center State Bank during the period of liquidation that was not issued for a loan to the bank. Why the $6,000 was borrowed or how it was expended finds very vague answers in this record; and, in the opinion of the writer, they fail to meet the requirements of the statute defining the limitations of a state bank in contracting indebtedness.

G. S. Gilbertson claims that the Buffalo Center State Bank became indebted to him for certain moneys he advanced to take up a mortgage on some Minnesota land, and to pay interest, and for salary during the period of the bank's liquidation.

The items disclosed by the record are as follows: November 19, 1914, mortgage against Norman County, Minnesota, land, $10,000; November 20, cash to Iowa National Bank on account of $5,000 note, $1,250. June 10, 1915, paid Northwestern Land & Colonization Company, on account to date, $1,731.91. Note of said Colonization Company, $4,500. Paid interest on said Colonization note of $4,500, from 7—1—13 to 6—10—15, $633.33. Account salary since August, 1908, at $125 per month, $12,000. Total, $30,115.25.

The salary item was not allowed by the receiver, but otherwise the claim was approved by him. It will be observed that the Gilbertson indebtedness was created after the Buffalo Center State Bank ceased to legally exist, since its charter rights expired by statutory limitation in January, 1914.

The Northwestern Land & Colonization Company was a corporation organized by Mr. Gilbertson, in which he was the largest owner of the stock. Receiver Peet testified:

"I find no record that Gilbertson took over any land at that time. None of the Norman County land came to me as receiver. It had all been disposed of prior to my appointment."

Gilbertson had been a director and an officer of the Center State Bank from its organization, and was present and participated in the meeting of August 1, 1908, when the resolution for liquidation and dissolution was passed by the stockholders. Very little appears in the record explanatory of the Gilbertson claim, other than that which appears on the face thereof. Is it a claim for which a stockholder's liability attaches? We think not.

In *Richmond v. Irons*, 121 U. S. 27, 60, it is said:

"The individual liability of the stockholders, as imposed by and expressed in the statute, is indeed for all the contracts, debts, and engagements of such association; but that must be restricted in its meaning to such contracts, debts, and engagements as have been duly contracted in the ordinary course of its business. That business ceased when the bank went into liquidation; after that there was no authority on the part of the officers of the bank to transact any business in the name of the bank so as to bind its shareholders, except that which is implied in the duty of liquidation, unless such authority had been expressly conferred by the shareholders. No such express

authority appears in this case, and the power of the president or other officers of the bank to bind it by transactions after it was put into liquidation is that which results by implication from the duty to wind up and close its affairs. That duty consists in the collection and reduction to money of the assets of the bank, and the payment of creditors equally and ratably, so far as the assets prove sufficient.''

The claim of C. H. Kelley, as allowed by the receiver, finds its basis on a promissory note of $8,000, dated July 9, 1913, signed by ''G. S. Gilbertson, trustee for Buffalo Center State Bank,'' and on an open account in the sum of $5,112. The record, as has been indicated, is quite meager in explanation of the nature of the transactions giving rise to said claims. The account in evidence shows:

''Dec. 5, 1913, by cash $1,332; Nov. 20, 1914, paid Iowa National Bank acct. $5,000 note, $1,250; Nov. 30, 1914, amt. advanced to take up mortgages on Norman County land, $10,300.''

This appears on the credit side of the ledger in C. H. Kelley's account, and is offset on the debit side by two items relative to Minnesota land mortgages, totaling $7,800.

It is disclosed that the Buffalo Center State Bank had been indebted for a number of years to the Des Moines Savings Bank, appellee, in the sum of $5,000, which debt had been guaranteed by Gilbertson, Kelley, and Harrington. Suit was instituted on this claim in 1914 by the Savings Bank, and in April, 1915, the claim was compromised and adjusted by the payment of $1,250 by Gilbertson, and by the payment of a like amount by Kelley. These items are included in the claims filed by Gilbertson and Kelley. It is also true that a considerable part of the indebtedness claimed by creditor Kelley had its origin after January, 1914, when the charter of the Buffalo Center State Bank expired. Furthermore, Gilbertson, as has been stated, was not the trustee of the insolvent bank, nor was express authority ever given him, as trustee or otherwise, to execute the note in question. The resolution adopted was not sufficient, for the reasons heretofore given.

Other points are presented both by appellant and appellees in briefs and argument; but, in view of our holding on the con-

trolling proposition in this case, there is no occasion to decide them. The decree entered by the trial court is correct, and it is—*Affirmed.*

EVANS, C. J., PRESTON, STEVENS, and ARTHUR, JJ., concur.