## HAMILTON RUBBER MFG. CO. et al. v. STEWART et al.
### No. 5986.

Circuit Court of Appeals, Fifth Circuit.
April 1, 1931.

Rehearing Denied April 29, 1931.

John Davis and Hoyt A. Armstrong, both of Dallas, Tex. (Peyton A. Ellison and H. A. Armstrong, both of Dallas, Tex., on the brief), for appellants.

Geo. T. Burgess and D. H. Hardy, both of Dallas, Tex. (Maco Stewart, of Dallas, Tex., on the brief), for appellees.

Before BRYAN and FOSTER, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Plaintiffs, alleging themselves to be judgment creditors of the United Tire Stores, Inc., with return nulla bona of executions thereon, brought this suit to recover of the defendants Elmo C. Tenison, Maco Stewart, Sr., and Maco Stewart, Jr., alleged unpaid subscriptions to the capital stock of said company. Plaintiffs further charged that the corporation had been dissolved and its charter forfeited for failure to pay the franchise tax exacted by the state of Texas. Each of the defendants denied any liability for the stock; Tenison averring that his stock had been paid for with property and merchandise conveyed to the company, and the other defendants claiming that they had legally severed their connection with the corporation and been discharged from responsibility for the stock before the claims of the plaintiff arose, the details of which will be discussed later in this opinion.

There was judgment for the defendants below, and plaintiffs have appealed.

On August 30, 1926, Tenison and the two Stewarts executed a charter for the United Tire Stores, Inc., with an authorized capital of $100,000, consisting of 1,000 shares of $100 each, divided equally into common and preferred stock. Tenison subscribed $40,000 for 400 shares of the stock, Maco Stewart, Sr., subscribed for $49,900 of preferred and $5,000 of common stock, and his son, Maco, Jr., subscribed for $100 of preferred and $5,000 of common stock. The original charter, as filed with the secretary of state on September 3, 1926, showed that these subscriptions had been paid in cash. Shares of stock for the full amount of $60,000 of preferred and common stock were delivered to Maco Stewart, Sr., by Tenison, and the latter executed a guaranty in favor of Stewart, Sr., against loss on the preferred stock. No cash was ever actually paid into the company for this stock. Stewart, Sr., delivered to his attorney his check for $5,000, to be turned over to the corporation only in event Tenison paid his subscription of $40,000 in cash. Tenison did not pay his subscription in cash, but claims to have turned over to the corporation merchandise and fixtures in settlement thereof. Having learned this fact, the Stewarts declined to go ahead with the formation of the company, and, after some negotiations with Tenison, it was agreed that the former should withdraw from the corporation. In carrying out the withdrawal of the Stewarts, there was first executed on December 31, 1926, an amendment to the charter, reducing the capital stock to $80,000, $50,000 of which was to be common and $30,000 preferred stock. Attached to this amendment was a statement of assets and liabilities showing merchandise, fixtures, etc., of the value of $80,686.82, and a list of creditors aggregating $686.82. The amendment, with lists, was fortified by affidavits of Tenison and the Stewarts and filed with the secretary of state on January 24, 1927. The check of Maco Stewart, Sr., for $5,000 was returned to him on December 21, 1926, with advice from his attorney as to what was necessary to bring about the withdrawal of himself and son from the company, which was done by reducing the stock to $80,000, and Tenison conveying to the company merchandise, fixtures, etc., in payment therefor. The stock of the Stewarts was then assigned to Tenison and delivered to Stewart's attorney with the assurance that it would not be surrendered until all liability therefor had been discharged.

In the meantime, that is, between the beginning of negotiations for the formation of the corporation and the period when the amendment was filed and arrangements made to have the Stewarts withdraw, Tenison had incurred obligations at the North Texas National Bank for $25,000 and at the Mercantile National Bank for $15,000, respectively, upon the first of which Maco Stewart, Jr., had given a guaranty of payment on behalf of himself and father, while the $15,000 note was the individual obligation of Tenison. Under date of January 14, 1927, and before the Stewarts surrendered their stock, the

Mercantile National Bank addressed to them a letter stating that Tenison had, arranged with it to take up both of said notes by giving his personal obligation, secured, by collateral, on the conditions (1) that the secretary of state should approve the amendment and reduction in the capital stock; (2) that all outstanding stock not held by Tenison (which of course was that held by the Stewarts) be transferred to him; and (3), that the amendment of the charter should be filed without delay. These notes were afterwards paid or taken up by execution of new obligations of Tenison, the amendment was filed and approved, and the Stewarts were released from the transaction, before the accounts of the plaintiffs Hamilton Rubber Manufacturing Company and the Birmingham Tire & Rubber Company were incurred. They were also fully advised of the withdrawal of the Stewarts and of the fact that the business was in the hands of Tenison. The claim of the Cupples Company Manufacturers arose out of dealings with Tenison, personally, before the United Tire Stores Company, Inc., was formed. It was for a carload of cheap inner tubes, which were kept separate from the other stock of the company, and had not been mixed therewith or taken over by it prior to the filing of the amendment to the charter and the withdrawal of the Stewarts. The representative of the Cupples Company was advised from time to time that this was a separate obligation of Tenison and the United Tire Stores Company, Inc., would not pay it. The latter company was discounting its bills and owed not in excess of $600 or $700 when the Stewarts withdrew. The stock formerly held by them was transferred to Tenison on the books of the corporation, and the corporate records showed that they were without any further interest therein. These facts all appear to be conceded by the appellants, but they contend the Stewarts and Tenison are liable notwithstanding, because of their original subscriptions and the fact that the same were not paid into the corporation in cash as recited by the original charter.

We agree fully with the suggestion of counsel for appellants that the subscriptions to the capital stock of a corporation constitute a trust fund for the benefit of creditors of the corporation, and upon its insolvency the subscribers may be compelled to pay the same in satisfaction of its debts. This is a necessary consequence of the protection and limited liability of stockholders who avail themselves of the corporate entity. But the principle can have no greater force than the reason for its existence. The charter is a contract between the state and incorporators for the protection of the latter and for the benefit of the creditors whose rights accrue in reliance thereon, but, if that relation on the part of any stockholder is lawfully ended before the rights of any given creditor arise, and he deals with the new concern and its present stockholders with full knowledge of those conditions, then he must take the situation as he finds it and will not be permitted to exact, of those who in good faith have withdrawn at a time when he had no claim, the performance of an obligation which, by mutual consent of every one having an interest in the matter, to his knowledge, had ended before his rights accrued. Mathis v. Pridham, 1 Tex. Civ. App. 58, 20 S. W. 1024; Cole v. Adams, 19 Tex. Civ. App. 507, 49 S. W. 1052; First National Bank v. Gustin, 42 Minn. 327, 44 N. W. 198, 6 L. R. A. 676, 18 Am. St. Rep. 510; Handley v. Stutz, 139 U. S. 417, 11 S. Ct. 530, 35 L. Ed. 227.

If the tubes of the Cupples Company were transferred to or converted by the United Tire Stores, Inc., or used by it after the withdrawal of the Stewarts, this did not render them liable therefor; neither did it render Tenison liable on his stock subscription, for the obligation of a stockholder to pay a subscription to satisfy corporate debts means contractual undertakings and not torts. See Schrader v. Manufacturers, 133 U. S. 67, 10 S. Ct. 238, 33 L. Ed. 564. In any event, we think the record shows very convincingly that Tenison had paid his subscription to the stock by transferring to the corporation merchandise and fixtures well worth the amount thereof, which was permissible under the laws of Texas. See section 6, art. 12, Constitution of Texas; article 1308, Revised Statutes of Texas, title 32, chapter 2.

Affirmed.